**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| UTE INDIAN TRIBE OF THE UINTAH AND OURAY INDIAN RESERVATION,<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES DEPARTMENT OF THE INTERIOR, DAVID BERNHARDT, in his official capacity as Secretary of the Department of the Interior, the BUREAU OF RECLAMATION, and the BUREAU OF INDIAN AFFAIRS,<br><br>Federal Defendants. | Civil No. 1:18-cv-00547-RMC |

**STATE OF UTAH'S MOTION TO INTERVENE**
**AND MEMORANDUM IN SUPPORT**

The State of Utah (the "State") moves this Court to grant the State intervention as a matter of right in this matter under Fed. R. Civ. P. 24(a) or, in the alternative, by permissive approval under Fed. R. Civ. P. 24(b). As required by Local Civil Rule 7(m), counsel for the State conferred with counsel for all parties on April 16 and 17, 2019. Counsel for Plaintiff, the Ute Tribe of the Uintah and Ouray Indian Reservation, indicated it will respond at a later date to the State's motion. Federal Defendants indicate that as to the State's motion under Rule 24(a), they will respond at a later date, and take no position as to the State's motion under Rule 24(b).

**INTRODUCTION**

The State, as applicant for intervention, does not approach this request lightly. This case, however, warrants the State's participation because it directly impacts Utah's scarce water resources, makes assertions concerning the State and its citizens which the State disputes, and petitions this Court to take actions which, if granted, would materially and adversely impact the State and its citizens.

The history of the relationship between the State, the Ute Tribe, and the United States associated with water is long and complex. Plaintiff presents its view of that history in its Amended Complaint, ECF No. 25 ("Am. Compl."). The State disputes much of what Plaintiff asserts. Two matters are of special concern to the State: (1) Plaintiff's assertions concerning the effect of the so-called 1965 Deferral Agreement and (2) Plaintiff's assertions regarding the quantity and administration of Plaintiff's water rights.

As a step towards construction of the Central Utah Project ("CUP") the Central Utah Water Conservancy District ("CUWCD"), the United States, and the Tribe negotiated and signed a so-called "Deferral Agreement" in 1965, *see* Am. Compl. ¶ 148. The State was not a party to that Agreement, did not sign it, and is not bound by its terms. In that agreement the United

States, CUWCD, and the Tribe agreed the Tribe would, in anticipation of certain benefits, defer the use of water on 15,242 acres of tribal lands so the Secretary of the Interior could demonstrate to Congress that construction of the CUP's Bonneville Unit could proceed without concern over conflicting claims to the water the project would collect. *See id*. The Deferral Agreement provided the Tribe compensation for its deferral of water use. *See id*. ¶ 149. One component of that compensation was the construction of water storage facilities that, for various reasons, were never built. Therefore, Congress gave the Tribe the remaining compensation, including additional financial compensation for the unbuilt water storage facilities, when it enacted the Central Utah Completion Act ("CUPCA") in 1992. Reclamation Projects Authorization and Adjustment Act of 1992, Pub. L. 102-575, 160 Stat. 4600 (1992). The Tribe accepted that compensation, and was therefore put in the same position it would have been from receiving all that it had agreed to under the Deferral Agreement. *Id*.

After the parties to the Deferral Agreement signed the document, Plaintiff and the State began negotiating a water compact. Aware of the Agreement, the State and Plaintiff worked in good faith to reach a settlement of water claims that was consistent with the Agreement's provisions. The parties successfully negotiated a compact in 1980. *See* Am. Compl. ¶ 175. Both the State and Plaintiff ratified that compact, but Congress did not approve it at that time. *Id*. Subsequently, the State and Plaintiff agreed to a slightly modified compact in 1990. *See id*. ¶ 177. After receiving supportive testimony from the Ute Tribe chairman,[1] Congress ratified the

---

[1] Plaintiff presented such testimony in both the House of Representatives and the Senate. *See* Testimony of Luke Duncan, Chairman of the Ute Indian Tribe, *Central Utah Project Completion Act: Hearing on S. 2969 Before the Subcomm. on Energy and Natural Resources, 101st Cong. 212-224 (1990). Central Utah Project Completion Act: Hearing on H.R. 3960 Before the Subcomm. on Water*, *Power, and Offshore Energy Resources*, 101st Cong. 231-272 (1990).

1990 Compact when it enacted CUPCA. Pub. L. 102-575, 160 Stat. 4600 (1992). That compact was subject to re-ratification by Plaintiff and the State. The State subsequently ratified the 1990 compact. Utah Code Ann. §§ 73-21-101 to 105. The Tribe has not.

In both the 1980 and 1990 compacts the State agreed to satisfy Plaintiff's water claims based on the very generous amount of water Plaintiff's so-called "Decker Report" suggested (modified only slightly), with the agreement that the State would be primarily responsible for administering water rights within the Uinta Basin. *See* Utah Code Ann. § 73-21-2 (repealed 2018) (1980 Compact); Utah Code Ann. § 73-21-103 (1990 Compact). And, the United States appropriated enormous sums of money to the Tribe when Congress approved CUPCA. The Tribe's Amended Complaint acknowledges approximately $200,000,000 in an initial appropriation, *see* Am. Compl. ¶ 188, and, since 1990, annual payments of about $2,000,000, *id*. ¶ 183 (or more than $56,000,000), for a total of more than $250,000,000. Both developments occurred with the agreement that the State's primary administration of water within the reservation would be guaranteed. Because of the checkerboarded land ownership pattern within the exterior boundaries of the reservation, primary administration of water was the most important component of the settlement for the State.

In its Amended Complaint, Plaintiff now asserts that it should have the benefit of the huge volume of water the State agreed to in the 1990 Compact, and the large amount of money the Tribe received under CUPCA, without accepting the State's primary administration of the water rights in the Uinta Basin as the 1990 Compact requires. Plaintiff contends the 1965 Deferral Agreement's "quantification" of Plaintiff's reserved water rights sets the stage for

Tribal, rather than State, administration of water rights in the Uinta Basin.[2] *See id*. ¶¶ 218-20. In addition, Plaintiff seeks recognition that the Ute Indian Irrigation Project ("UIIP") is a Tribal trust asset, *id.* ¶¶ 221-25, declaratory relief regarding alleged federal obligations to secure and develop Plaintiff's reserved water rights, *id.* ¶¶ 234-241, invalidation of the 1967 Midview Exchange Agreement, *id*. ¶¶ 254-59, construction of a water storage project or projects, *id.* ¶¶ 242-46 and 260-63, recognition of Plaintiff's right to receive a certain quality of water, *id.* ¶¶ 247-53, and a declaration that the federal government has an obligation to secure water rights in the Bottle Hollow Reservoir, *id.* ¶¶ 264-68. Also, Plaintiff seeks an historical accounting of the administration of the UIIP, *id*. ¶¶ 269-73, and asserts the United States has breached related, alleged fiduciary obligations and agreements, *id*. Finally, Plaintiff alleges the United States violated the Tribe's and its members' right to Equal Protection under the Fifth Amendment. *Id*. ¶¶ 274-77.

Given the allegations in Plaintiff's Amended Complaint, this Court should grant the State's intervention as of right. The State's motion is timely because the case is in its beginning stages. The United States moved to dismiss the Complaint on October 16, 2018. Fed. Defs.' Mot. to Dismiss, ECF No. 22. Plaintiff amended its Complaint and the United States responded by again moving to dismiss on March 22, 2019. ECF No. 28. The State's participation as an intervenor will not affect the progress of the case. Thus, the motion to intervene is timely.

[2] The Tribe's Business Committee has recently approved the "Ute Indian Tribe Water Resources Ordinance," which includes a section establishing tribal "Administration and Regulation" of Tribal water resources. The approval notes, in part, that the "Indian Reserved Water Rights' quantification [was] fully and completely recognized and acknowledged by the State and federal governments in the 1965 Deferral Agreement…." Uintah and Ouray Tribal Business Committee Resolution No. 18-310, July 24, 2018. The State denies the assertions that the Deferral Agreement could, under any circumstances, have quantified the Tribe's reserved water right and that the State "recognized [or] acknowledged" any such alleged quantification.

The State's substantial interests in this matter, including sovereign interests in the administration and distribution of the State's scarce water resources, arises in part from Utah's status as one of the most-arid states in the nation—Utah receives an average of about 11 inches of precipitation per year.[3] Management of water has direct and indirect impacts on the State, its lands, its economy, its citizens, and their property rights.

Despite Plaintiff's assertions to the contrary, *see* Am. Compl. ¶ 176, the State and Plaintiff each exercised their authorities as sovereigns to negotiate and agree upon the 1990 Compact. Granting the relief Plaintiff has requested in this case would conflict with the terms of a Congressionally-ratified Compact, negatively impact the State's economic and property interests, inhibit the State's authority and ability to regulate and administer water rights, harm the State's authority to protect its sovereign interests, and prevent the parties from realizing the benefit of the bargain they reached in the 1990 Compact. Intervention is also critical because the United States cannot adequately represent the State's unique interests.

## LEGAL BACKGROUND[4]

Rule 24 of the Federal Rules of Civil Procedure provides for both intervention as of right and permissive intervention. Rule 24(a) states, in relevant part:

> On timely motion, the court must permit anyone to intervene who: (1) is given an unconditional right to intervene by a federal statute; or (2) claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

[3] By contrast, Washington, D.C. receives about 40 inches annually.

[4] For purposes of this motion, the State adopts by reference the Federal Defendants' Factual and Other Background. United States' Mot. to Dismiss, ECF No. 28 at 2-13.

This Circuit has held that qualification for intervention as of right depends on the following four factors:

> (1) the timeliness of the motion; (2) whether the applicant "claims an interest relating to the property or transaction which is the subject of the action"; (3) whether "the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest"; and (4) whether "the applicant's interest is adequately represented by existing parties."

*Fund for Animals, Inc. v. Norton*, 322 F.3d 728, 731 (D.C. Cir. 2003) (citation omitted). In addition, a party seeking to intervene as of right must also demonstrate it has standing under Article III of the Constitution. *Id*. at 732.

## ARGUMENT

### I. The State has standing.

To establish Article III standing, a prospective intervenor must show an injury in fact, causation, and redressability. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). The State has standing in this case because Plaintiff's assertions harm the State's sovereign interests in providing order and certainty in the beneficial use of the State's precious water resources. *See* Utah Code Ann. § 73-2-1(3)(a) (State administration, supervision, measurement, appropriation, apportionment, and distribution of waters within Utah); § 73-10-1 (declaration of public water policy); § 73-1-1(1) (waters of the State are the property of the public). The Utah Supreme Court has referred to water as the State's "life blood" and has "likened a drop of water [to] a drop of gold." *Longley v Leucadia Fin. Corp.*, 9 P.3d 762, 765 (Utah 2000). *See also Enervest v. Utah State Engineer*, 435 P.3d 209, 210 (Utah 2019) (same); *Wayman v. Murray City Corp.*, 458 P.2d 861, 863 (Utah 1969) ("Because of the vital importance of water in this arid region both our statutory and decisional law have been fashioned in recognition of the

desirability and of the necessity of insuring the highest possible development and of the most continuous beneficial use of all available water with as little waste as possible.”).

In addition, the State has an interest in maintaining the order and certainty Congress provided with its ratification of the 1990 Compact, as well as the benefit of the bargain to which the parties agreed in that Compact, which the State subsequently ratified. *See* Utah Code Ann. §§ 73-21-101 to 105. The 1990 Compact struck a delicate balance, recognizing and providing Plaintiff with rights to the use of a huge amount of water, balanced by the requirement that the State Engineer would be primarily responsible for administering such rights in conjunction with the other water rights in the area. Plaintiff’s Amended Complaint seeks to upset this balance, which would cause an “injury in fact” to the State. “A government’s loss of sovereignty over land within its jurisdiction is a legally protectable interest.” *Akiachak Native Community v. U.S. Dep’t of Interior*, 584 F.Supp.2d 1, 6 (D.D.C. 2008) (citing *City of Sault St. Marie v. Andrus*, 458 F. Supp. 465, 468 (D.D.C. 1978)). The same is true with respect to water resources. *See* Utah Code Ann. § 68-3-12.5(24) (definition of “real estate” or “real property” includes “a water right”). A decision denying Plaintiff’s claims would redress injury to the State. Thus, the State clearly has standing here.

**II. The State is entitled to intervene as of right.**

The Court should grant the State’s motion to intervene as of right because the State meets all four criteria under Fed. R. Civ. P. 24(a). The State’s motion is timely, the State has a strong interest in the resources within its borders which will be impaired if Plaintiff succeeds in this case, and the existing parties are unable to adequately represent the State’s interests.

**A. The State's motion is timely.**

To determine whether a motion to intervene is timely, courts may consider: "(a) the time elapsed since the inception of the action, (b) the probability of prejudice to those already party to the proceedings, (c) the purpose for which intervention is sought, and (d) the need for intervention as a means for preserving the putative intervenor's rights." *WildEarth Guardians v. Jewell*, 320 F.R.D. 1, 3 (D.D.C. 2017) (citation omitted).

The State's motion is timely. The Federal Defendants responded only recently to Plaintiff's Amended Complaint. ECF No. 28. Plaintiff's response to the Federal Defendants' Motion to Dismiss the Amended Complaint is not yet filed. *See* Minute Order, March 29, 2019 (granting extension to April 29, 2019). The State supports the United States' Motion to Dismiss the Amended Complaint but does not intend to participate in briefing on that motion unless the Court should request it to do so. The State's intervention, therefore, will not harm or prejudice any existing party because the case is still in its early stages. *See Roane v. Leonhart*, 741 F.3d 147, 151 (D.C. Cir. 2014) (describing potential prejudice as the core of the timeliness factor). Likewise, the State's proposed intervention will not delay the progress of the case. Thus, the motion to intervene is timely.

**B. The State has a strong interest in the administration and distribution of water.**

This Circuit has held that if a court concludes a proposed intervenor has constitutional standing, that "is alone sufficient to establish that the [party] has an interest relating to the property or transaction which is the subject of the action." *Fund for Animals*, 322 F.3d at 735 (citation omitted). As demonstrated above, a state has a sovereign interest in the distribution and appropriation of water resources in the state. *See also Foster v. Gueory*, 655 F.2d 1319, 1324 (D.C. Cir. 1981) ("An intervenor's interest is obvious when he asserts a claim to property that is

the subject matter of the suit....”); Utah Code Ann. § 73-1-1 (declaring all waters in the state property of the public). As a signatory to the 1990 Compact, the State has an interest in the interpretation and implementation of the Compact and in the proper distribution of the allocation of water in the State. The State negotiated for a single, principal outcome from the 1990 Compact: primary State administration of all water rights in the area where Plaintiff’s reservation is located, as the Compact describes. To circumvent this, Plaintiff now asserts the 1965 Deferral Agreement not only bound the State to the amount of water the Decker Report recognized, *see e.g.*, Am. Compl. ¶¶ 149 and 216, but that Plaintiff is implicitly entitled to administer, regulate, adjudicate, and legislate its water rights. *Id*. ¶ 220. The State, however, did not sign and is not a party to the Deferral Agreement, and is not bound by it. The State would not have assented to the generous allocation of water the 1990 Compact provides to Plaintiff without agreement that the State would primarily administer the associated water rights—particularly when Plaintiff proposes to move the water outside the exterior boundaries of its reservation.

For all these reasons, the State is seriously concerned with the claims at issue in this case and has strong interests at risk justifying intervention. *See WildEarth Guardians v. Salazar*, 272 F.R.D. 4, 18, 21 (D.D.C. 2010) (granting intervention to Wyoming and finding state interest in participation in the regulatory process, environmental quality within its borders, and protecting its economic stake). *See also United States v. Anderson*, 736 F.2d 1358, 1365-66 (9th Cir. 1984); *In re Gen. Adjudication of All Rights to Use Water in Big Horn River Sys.*, 835 P.2d 273, 282 (Wyo. 1992); *United States v. City & Cty. of Denver*, 656 P.2d 1, 9 (Colo. 1982).

**C. Judgment in favor of Plaintiff would impair the State’s interests.**

Whether a proposed intervenor is so situated that the disposition of an action may impair its ability to protect its interest is determined by looking at the practical consequences of denying

intervention. *Akiachak Native Community*, 584 F. Supp. 2d at 6. Here, the State would suffer a concrete injury in fact if the case were decided as Plaintiff requests because the State's authority and ability to manage and administer water rights within the Uinta Basin would be significantly harmed. Further, if the Court grants the relief Plaintiff requests, the State could potentially have less water available to allocate to other State water users. *U.S. v. New Mexico*, 438 U.S. 696, 705 (1978) ("federal reserved water rights will frequently require a gallon-for-gallon reduction in the amount of water available for water-needy state and private appropriators."). And, such disposition would impact the State's ability to use its allocation from the Colorado River and to fulfill its obligations under the Colorado River Compact because quantified reserved water rights are charged against Utah's apportionment from the Colorado River. *See Arizona v. California*, 373 U.S. 546, 601 (1963) (holding that reserved water rights within a state on the river were charged against that state's apportionment);

The 1990 Compact recognizes a Tribal water right of 258,943 acre-feet of depletion of water from the Colorado River and its tributaries per year.[5] *See* Utah Code Ann. § 73-21-103.[6] The Tribe asserts the Decker Report lists "historical and presently irrigable Reservation lands, as well as future practicably irrigable lands" on Plaintiff's Reservation. *See* Am. Compl. ¶¶ 44 and 46. However, the Decker Report could not have been based on this practicably Irrigable Acreage ("PIA") standard because Mr. Decker performed his survey in or before the year 1960 and the

---

[5] By contrast, the State of Nevada's entire share from the Colorado River is 300,000 acre-feet of depletion annually. *See* Boulder Canyon Project Act, 43 U.S.C. § 617c(a); *Arizona v. California*, 460 U.S. 605, 610 (1983).

[6] Plaintiff asserts that its water right has a "total volume of 549,685 acre feet per year." Am. Compl. ¶ 46. This number is inaccurate. Regardless, a significant portion of the difference between 549,685 and 258,943 acre-feet presumably relates to Plaintiff referring to the total diversion of water it would be allowed to divert while the State, and the Compact, describe the amount of depletion of water from the hydrologic system Plaintiff would be allowed.

United States Supreme Court did not articulate the PIA standard until 1963. *See Arizona*, 373 U.S. at 600-01. Further, the Decker report includes large land areas deemed "irrigable" (in other words arable, or susceptible to irrigation) that would not likely be "practicably irrigable" under the more restrictive, but applicable, PIA standard. Nevertheless, by way of the 1980 and 1990 compacts, the State acquiesced, as part of a negotiated settlement, to the vast amount of water the Decker report suggested (with very minor modifications)—with the agreement that other provisions of the Compact would benefit the State in exchange for its concession. Again, the most important provision for the State was primary, uniform regulation and administration of water rights in the Uinta Basin. The State's significant interests would be substantially harmed if it were to lose the ability to administer all such water rights. The State Engineer's administration of the Utah Water Code benefits all citizens in the State (including members of the Tribe), offering fair and just distribution and adjudication of water rights and order and certainty in the beneficial use of the State's waters.

Moreover, the practical consequences of denying intervention to the State would be serious. *Nuesse v. Camp*, 385 F.2d 694, 702 (D.C. Cir. 1967). If not allowed to intervene here, the State would have little ability after the fact to remedy these harms, or even participate in a process to attempt to prevent the harms. State involvement now, in this lawsuit, therefore minimizes future dispute and potential litigation to protect the State's interests at issue in this case. *Id*. at 700; *Natural Res. Def. Council v. Costle*, 561 F.2d 904, 911 (D.C. Cir. 1977).

Other courts in this circuit have found that similar situations justified intervention. *See WildEarth Guardians*, 272 F.R.D. at 19 (granting a state intervention under similar circumstances and stating, "there is little doubt that resolution of this action in Plaintiff's favor would affect Wyoming's financial and socioeconomic stake . . . within its borders."); *Fund for*

*Animals*, 322 F.3d at 735 (holding state has interest in preserving its regulating role within its borders). The Court should therefore grant the State's request to intervene.

**D. Existing parties cannot adequately represent the State's interests.**

The existing parties cannot adequately represent the State's interests in this case. "The burden of showing that the representation of the existing parties 'may be inadequate' is 'minimal.'" *WildEarth Guardians*, 320 F.R.D. at 4 (quoting *Fund for Animals*, 322 F.3d at 735). A movant need only show representation of its interest "*may be*" inadequate. *Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538 n.10 (1972) (citation omitted) (emphasis added). *See also Dimond v. District of Columbia*, 792 F.2d 179, 192 (D.C. Cir. 1986) (describing requirement as "not onerous"); *United States v. American Tel. & Tel. Co.,* 642 F.2d 1285, 1293 (D.C. Cir. 1980) (stating that a petitioner "ordinarily should be allowed to intervene unless it is clear the party will provide adequate representation for the absentee"). Several cases in this circuit have permitted intervention by states when the federal government was already a party. *See*, *e.g.*, *WildEarth Guardians*, 320 F.R.D. at 5 (finding "the Federal Defendants do not adequately represent the interest of Wyoming, Colorado, or Utah"); *Akiachak Native Cmty.*, 584 F. Supp. 2d at 7 (holding that the existing federal defendants "have no clear interest in protecting Alaska's sovereignty or Alaska's interest"); *County of San Miguel, Colo. v. MacDonald*, 244 F.R.D. 36, 48 (D.D.C. 2007) ("[W]e have often concluded that governmental entities do not adequately represent the interest of aspiring intervenors."); *Atlantic Sea Island Group LLC v. Connaughton*, 592 F.Supp.2d 1, 7 (D.D.C. 2008) (allowing state to intervene as of right); *WildEarth Guardians v. U.S. Bur. of Land Mgmt.*, No. 12-0708, 2012 WL 1280488, at *1-2 (D.D.C. June 7, 2012) (same).

Here the Federal Defendants' duty runs to the interests of the American public as a whole, relative to its competing trust obligation to Plaintiff, while the State primarily considers the interests of its own citizens. *WildEarth Guardians*, 320 F.R.D. at 5. Moreover, the State has unique sovereign interests not shared by the federal government. In *California Oregon Power Co. v. Beaver Portland Cement Co.*, the U.S. Supreme Court held that certain federal statutes, such as the Desert Land Act, 43 U.S.C. §§ 321-33, and the Mining Act, 14 Stat. 251, 253, severed the land and water estates in the West and directed that rights to water be obtained under state law. 295 U.S. 142, 162 (1935). *See also California v. United States*, 438 U.S. 645, 656 (1978). Under Utah law the State Engineer is authorized to administer water rights, and the Utah Supreme Court has said "the object of the engineer's office is to maintain order and efficiency in the appropriation, distribution, and conservation of water and to allow as much water to be beneficially used as possible." *United States v. Dist. Ct. of Fourth Judicial Dist.*, 238 P.2d 1132, 1137 (Utah 1951) (*overruled on other grounds*).

In this case the interests of the United States and the State diverge and the United States as a party cannot adequately represent the State's interests related to Plaintiff's interpretation of the Deferral Agreement. Likewise, the United States cannot represent the State's interests in the wholistic administration of water rights in the area of the State where the reservation is located. Further, the State not only denies that the Deferral Agreement has any binding effect on the State but also denies that the Deferral Agreement could, under any circumstances, have possibly effectuated a "binding quantification" of Plaintiff's reserved water rights. *See* Am. Compl. ¶ 215. Such rights are only quantified in federal or state court proceedings.[7] Parties may, by agreement,

[7] To facilitate the adjudication of tribal reserved water rights, Congress has consented to joinder for the adjudication of rights to the use of water of a river system or other source and this consent extends to the adjudication of tribal reserved water rights. *See* 43 U.S.C. 666(a) (the so-called

determine an amount of water they will recommend to Congress and, subsequently, to a court for adjudication as a quantified water right. But the parties, by themselves, simply may not, under any circumstances, "quantify" a water right, by agreement or otherwise. Thus, the State satisfies its minimal burden to show representation by other parties may be inadequate.

### III.     In the alternative, the Court should grant the State permissive intervention.

If the Court does not grant the State's intervention as of right, it should nonetheless allow the State to intervene permissively. The Court has discretion to grant intervention to any party that "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1). The State's defense of its ability to administer, manage, and distribute waters within its borders shares common questions of law and fact with the main action. Moreover, the motion is timely and will not unduly delay or prejudice the adjudication of the claims in this matter, as required by Fed. R. Civ. P. 24(b). Thus, the Court should allow the State to intervene as of right, or it should grant permissive intervention.

---

"McCarran Amendment"); *Colo. River Water Conservation Dist. v. U. S.*, 424 U.S. 800, 809-13 (1976). State and federal courts each have jurisdiction to adjudicate tribal reserved water rights. "Regardless of whether a stream adjudication is resolved by consent, negotiation, or litigation, the underlying adjudicated water right must arise under either federal or state law." *U.S. v. Orr Water Ditch Co.*, 309 F.Supp.2d 1245, 1248 (D. Nev. 2004). Where reserved water right claims arising under federal law may be resolved by settlement, those settlements must ultimately be presented to a court for approval. *See generally Arizona v. California*, 547 U.S. 150, 152 (2006) (approving settlement of the Fort Yuma Indian Reservation reserved water right claims); *Nevada v. United States*, 463 U.S. 110, 118 (1983) (discussing a settlement of tribal reserved water rights presented to and approved by a federal court); *State ex rel. State Engineer v. United States*, 425 P.3d 723, 729 (N. M. App. 2018) (discussing a settlement of tribal reserved water right presented to and approved by a state court).

## CONCLUSION

For the foregoing reasons, the Court should grant the State's motion to intervene.

Respectfully submitted this 17th day of April, 2019.

*/s/Alison D. Garner*__
Alison D. Garner (DC Bar No. 983858)
Assistant Attorney General
STATE OF UTAH
Office of the Utah Attorney General
160 East 300 South, 5th Floor
P.O. Box 140857
Salt Lake City, Utah 84114
(801) 366-0353
alisongarner@agutah.gov
*Counsel for Proposed Intervenor-Defendants*

**CERTIFICATE OF SERVICE**

I hereby certify that on April 17, 2019, I filed the foregoing with the CM/ECF system, which will provide service to counsel of record.

__*Alison D. Garner*__