## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UTE INDIAN TRIBE OF THE UINTAH AND OURAY INDIAN RESERVATION, <br><br>     Plaintiff, <br><br>       v. <br><br> THE UNITED STATES DEPARTMENT OF THE INTERIOR, DAVID BERNHARDT, in his official capacity as Secretary of the Department of the Interior, the BUREAU OF RECLAMATION, and the BUREAU OF INDIAN AFFAIRS, <br><br>     and <br><br> THE STATE OF UTAH, CENTRAL UTAH WATER CONSERVANCY DISTRICT, a political subdivision of the State of Utah, GARY HERBERT, in his capacity as Governor of Utah, and TERESA WILHELMSEN[1], P.E., in her capacity as Utah State Engineer and Director, Utah Division of Water Rights, <br><br>     Defendants. | Civil No. 1:18-cv-00547-CJN |

## DEFENDANT STATE OF UTAH, GARY HERBERT, AND TERESA WILHELMSEN'S MOTION TO DISMISS THE SECOND AMENDED COMPLAINT AND MEMORANDUM IN SUPPORT

---

[1] Plaintiff's Second Amended Complaint misspelled Ms. Wilhelmsen's name. The State Defendants have corrected that misspelling here and throughout.

## <u>STATE OF UTAH, GARY HERBERT, AND TERESA WILHELMSEN'S MOTION TO DISMISS</u>

The State of Utah, Gary Herbert, in his capacity as Governor of Utah, and Teresa Wilhelmsen, P.E., in her capacity as Utah State Engineer and Director, Utah Division of Water Rights ("State Defendants"),[2] move to dismiss under Federal Rule of Civil Procedure 12(b)(1) and Rule 12(b)(6), the first, second, fourth, and sixteenth claims for relief in the Second Amended and Supplemented Complaint of Plaintiff Ute Indian Tribe of the Uintah and Ouray Indian Reservation, ECF No. 57 ("Complaint").

The State Defendants also join in the Federal Defendants' Motion to Dismiss Plaintiff's Second Amended Complaint.

---

[2] Defendant Central Utah Water Conservancy District files separately from the State Defendants.

## MEMORANDUM IN SUPPORT OF STATE DEFENDANTS' MOTION TO DISMISS

## INTRODUCTION

This is a case about water, water claims, water rights, the history of water-related agreements, the administration of water rights, and development of water resources. Such topics may not often arise in this Court. The District of Columbia and surrounding states receive abundant annual precipitation, generally making water resources plentiful. The State of Utah, on the other hand, where Plaintiff's reservation is located, is one of the driest states in the Union. Water resources are scarce, competition for such resources is fierce, and holistic administration of water rights is critical. The Utah Supreme Court has referred to water as Utah's "life blood" and has "likened a drop of water [to] a drop of gold." *Longley v. Leucadia Fin. Corp.*, 9 P.3d 762, 765 (Utah 2000). *See also Enervest v. Utah State Eng'r*, 435 P.3d 209, 210 (Utah 2019); *Wayman v. Murray City Corp.*, 435 P.2d 861, 863 (Utah 1969) ("Because of the vital importance of water in this arid region both our statutory and decisional law have been fashioned in recognition of the desirability and of the necessity of insuring the highest possible development and of the most continuous beneficial use of all available water with as little waste as possible.").

In sixteen claims, Plaintiff alleges numerous violations by the Federal Defendants, State Defendants, and the Central Utah Water Conservancy District ("CUWCD"). The Court should dismiss the first, second, fourth, and sixteenth claims against the State Defendants for numerous deficiencies, including lack of jurisdiction, failure to identify a cause of action, laches, and failure to state a claim. The State Defendants join in the Federal Defendants' and CUWCD's

motions to dismiss filed contemporaneously, and the Court should also dismiss the claims as argued in the Federal Defendants' and CUWCD's motions to dismiss.[3]

## FACTUAL BACKGROUND

In a move toward construction of a significant western water project, the Central Utah Project ("CUP"), the United States, the CUWCD, and Plaintiff negotiated and signed a so-called Deferral Agreement in 1965. ECF No. 22-1. The State Defendants were not parties to the Deferral Agreement, did not sign it, and are not bound by its terms.

In the Deferral Agreement, the United States, CUWCD, and Plaintiff agreed Plaintiff would defer the use of water on 15,242 acres of tribal lands so the Secretary of the Department of the Interior could demonstrate to Congress that construction of the CUP's Bonneville Unit could proceed without concern over conflicting claims to the water the CUP would collect. *See id.*; Compl. ¶¶ 154-55. In exchange, the Deferral Agreement provided Plaintiff compensation for its deferral of that water use. *Id.* Part of that compensation involved the planned construction of water storage facilities that, for various reasons, were never built. *Id.* ¶210. Thus, Congress gave Plaintiff additional monetary compensation for the unconstructed water storage facilities when it enacted the Central Utah Project Completion Act ("CUPCA") in 1992. *See* Reclamation Projects Authorization and Adjustment Act of 1992, Pub. L. 102-575, 160 Stat. 4600 (1992). Plaintiff accepted that compensation and was therefore put in the same position it would have been had it received all that was agreed upon in the Deferral Agreement. *Id.* at § 503(b)(3) (the purpose of

---

[3] The State has made every effort not to make arguments or assertions in this Motion redundant to the Federal Defendants' and CUWCD's motions. The arguments in this Motion are therefore additional to the Federal Defendants' and CUWCD's arguments or focused on those claims against the State Defendants.

CUPCA and the 1990 Compact was to "put the Tribe in the same economic position . . . had the features contemplated by the September 20, 1065 Agreement been constructed").

Plaintiff and the State began negotiating a water compact in the 1970s and worked in good faith for many years to reach a settlement of water claims that was consistent with the provisions of the Deferral Agreement. Compl. ¶ 183. The parties successfully negotiated a compact in 1980. *Id*. The State and Plaintiff ratified the 1980 Compact, but Congress did not approve it at that time. *Id*. ¶ 184-85. Later, the State and Plaintiff agreed to a slightly modified compact in 1990. After receiving supportive testimony from the then and now Ute Tribal Business Committee Chairman,[4] Congress ratified the 1990 Compact when it enacted CUPCA. Pub. L. 102-575, 160 Stat. 4600 (1992). That compact was subject to re-ratification by Plaintiff and the State. The State subsequently ratified the 1990 Compact. Utah Code Ann. §§ 73-21-101 to 105. Plaintiff has not.

In both the 1980 and 1990 Compacts, the State agreed to satisfy Plaintiff's water claims based on the enormous amount of water suggested by the Plaintiff's so-called "Decker Report," with the key agreement that the State would be primarily responsible for administering water rights within the Uinta Basin (where Plaintiff's reservation is located). *See* Utah Code Ann. § 73-21-2 (1980 Compact) (repealed 2018); § 73-21-103 (1990 Compact). This is important because of the checkerboard pattern of land ownership within the exterior boundaries of the historic reservation. To date, the United States has appropriated over $250,000,000 to Plaintiff under CUPCA. Compl. ¶¶ 193, 198.

---

[4] *See* Testimony of Luke Duncan, Chairman of the Ute Indian Tribe, *Central Utah Project Completion Act: Hearing on S. 2969 Before the Subcomm. on Energy and Natural Resources*, 101st Cong. 212-224 (1990); *Central Utah Project Completion Act: Hearing on H.R. 3960 Before the Subcomm. on Water, Power, and Offshore Energy*, 101st Cong. 231-272 (1990).

In its Second Amended Complaint, Plaintiff now asserts that it should have the benefit of the large volume of water to which the State agreed in the 1990 Compact, and the enormous sum of money the United States appropriated to Plaintiff pursuant to CUPCA, without accepting the State's primary administration of water rights in the Uinta Basin. In four claims against the State Defendants, Plaintiff contends the 1965 Deferral Agreement's "quantification" of Plaintiff's reserved water rights requires Tribal, rather than State, administration of water rights in the Uinta Basin. *See id*. ¶¶ 236-43; 255-63. Plaintiff also erroneously claims it previously adjudicated its right to exercise administrative and regulatory authority over its reserved water rights in the Tenth Circuit, in unrelated proceedings to which the Federal Defendants were not parties. *Id*. ¶¶ 244-49. Finally, Plaintiff claims the State Defendants violated Plaintiff's and its members' right to Equal Protection under the Fifth and Fourteenth Amendments, 42 U.S.C. §§ 1981 and 1983, and 42 U.S.C. §2000d. Compl. ¶ 346-59.

## STANDARD OF REVIEW

Federal district courts are "courts of limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). A motion to dismiss under Rule 12(b)(1) "presents a threshold challenge to the court's jurisdiction." *Francis v. Internal Revenue Serv.*, 2020 WL 3129030 at *5 (D.D.C. June 12, 2020). Thus, the Court is "obligated to dismiss a claim if it lacks subject matter jurisdiction." *Id*. (quoting Fed. R. Civ. P. 12(b)(1)). The plaintiff bears the burden of establishing by a preponderance of the evidence that the Court has subject matter jurisdiction. *Id*. *See also Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992).

In deciding a Rule 12(b)(1) motion, the court "need not limit itself to the allegations of the complaint." *Francis*, 2020 WL 3129030 at *5 (quoting *Grand Lodge of the Fraternal Order of Police v. Ashcroft*, 185 F. Supp. 2d 9, 14 (D.D.C. 2001). Rather, "the court may consider such

materials outside the pleadings as it deems appropriate to resolve the question of whether it has jurisdiction to hear the case." *Francis*, 2020 WL 3129030 at *5 (internal quotations omitted). 2005). *See also Gordon v. Nat'l Youth Work Alliance*, 675 F.2d 356, 362-63 (D.C. Cir. 1982) ("it has been long accepted that the judiciary may make appropriate inquiry beyond the pleadings to satisfy itself on authority to entertain the case"); *Hohri v. United States*, 782 F.2d 227, 241 (D.C. Cir., 1986) ("the court need not limit itself to the allegations of the complaint").

The court "must assume the truth of all material factual allegations in the complaint and construe the complaint liberally, granting the plaintiff the benefit of all inferences that can be derived from the facts alleged." *Francis*, 2020 WL 3129030 at *5 (quoting *Thomas v. Principi*, 394 F.3d 970, 972 (D.C. Cir. 2005) (internal quotations omitted). However, "the plaintiff's factual allegations in the complaint will bear closer scrutiny in resolving a Rule 12(b)(1) motion than in resolving a Rule 12(b)(6) motion for failure to state a claim." *Francis*, 2020 WL 3129030 at *5 (quoting *Grand Lodge*, 185 F. Supp. 2d at 13-14) (internal quotations omitted).

"To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. *Citizens for Responsibility and Ethics in Wash. v. U.S. Dep't of Justice*, 436 F. Supp. 3d 354, 357 (D.D.C. 2020) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). *See also Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "[A] court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Citizens*, 436 F. Supp. 3d at 357 (citing *Iqubal*, 556 U.S. at 678). "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqubal*, 556 U.S. at 679. "A pleading must offer more than labels and conclusions or a formulaic recitation of the elements of a cause of action." *Citizens*, 436 F. Supp. 3d at 357 (citations and quotations omitted). "In ruling upon a motion to dismiss for failure to state a claim,

a court may ordinarily consider only the facts alleged in the complaint, documents attached as

exhibits or incorporated by reference in the complaint, and matters about which the Court may

take judicial notice." *Citizens*, 436 F. Supp. 3d at 358 (quoting *Gustave-Schmidt v. Chao*, 226 F.

Supp. 2d 191, 196 (D.D.C. 2002).

## <u>ARGUMENT</u>

The Second Amended Complaint should be dismissed as a matter of law. As Federal

Defendants argue, lack of jurisdiction, failure to state a claim upon which relief can be granted,

statutes of limitations, failure to identify enforceable trust duties, waiver, lack of standing, and

failure to meet appropriate pleading requirements, all bar Plaintiff's claims. The State

Defendants join each of the Federal Defendants' arguments. Further, the first, second, fourth, and

sixteenth claims against the State Defendants fail to state a claim and should be dismissed for

lack of jurisdiction.

Specifically, Plaintiff fails to identify any cause of action against the State Defendants in

the first, second, and fourth claims. Plaintiff's fourth claim is also barred by laches. The first

claim fails because the State was not a party to the Deferral Agreement, and this court lacks

jurisdiction to adjudicate or quantify Plaintiff's water rights. Plaintiff's sixteenth claim fails to

state a claim under § 1983 because the State and the Individual State Defendants (Gov. Herbert

and Ms. Wilhelmsen) in their official capacities, are not "persons" subject to suit and Plaintiff

has not pleaded any facts showing that the current Governor or State Engineer have undertaken

any actions to violate Plaintiff's constitutional rights. Plaintiff has failed to state a claim under §

1981 because § 1981 does not provide a private right of action against state actors. And

Plaintiff's claim regarding Title VI should be dismissed because it cannot be brought against

individuals, because the State is not a "program or activity" subject to Title VI, and because Plaintiff has not sufficiently alleged intentional discrimination.

## I.     Plaintiff fails to identify any cause of action against the State Defendants.

Claims one, two, and four should be dismissed because Plaintiff has not identified a cause of action against the State Defendants for those claims.[5] To proceed in federal court on a claim, a plaintiff must identify a grant of subject matter jurisdiction and a cause of action. Here, Plaintiff has failed on both counts for the first, second, and fourth claims.

A plaintiff who fails to show that the law authorizes him to bring his lawsuit fails to state a claim upon which relief can be granted. *See Sacks v. Reynolds Sec., Inc.*, 593 F.2d 1234, 1239 (D.C. Cir. 1978) (explaining that where a complaint does not "sufficiently establish" a federal cause of action, the "correct motion for dismissal" is made through Rule 12(b)(6)); *El Paso Natural Gas Co. v. United States*, 750 F.3d 863, 887-88 (D.C. Cir. 2014) (affirming district court's dismissal on alternative ground that claim failed to identify a cause of action and thus had to be dismissed under Rule 12(b)(6)).

Plaintiff cites the Declaratory Judgment Act, 28 U.S.C. § 2202. Compl. ¶¶ 243, 254, 161. However, the Declaratory Judgment Act does not provide an independent cause of action. *Van Ravenswaay v. Napolitano*, 613 F. Supp. 2d 1, 6 (D.D.C. 2009). The Act merely "presupposes the existence of a judicially remediable right." *Shilling v. Rogers*, 363 U.S. 666, 677 (1960); *see also* 28 U.S.C. § 2202 (authorizing further relief based upon an existing declaratory judgment).

As to the second claim, while Plaintiff has referred to the Tenth Circuit's *Ute* line of cases, as discussed below, *infra* at Sec. IV, none of those decisions addressed water rights, water-related agreements, CUPCA, or the adjudication of Plaintiff's reserved water right claims.

---

[5] The State Defendants join the Federal Defendants' arguments as to these claims.

Because the Second Amended Complaint fails to identify any cause of action against the State Defendants for the first, second, and fourth claims, they should be dismissed for failure to state a claim.

## II. Plaintiff's first and fourth claims regarding the Deferral Agreement fail to state a claim against the State Defendants because the State Defendants were not parties to and could not be bound by the Deferral Agreement, which did not quantify Plaintiff's reserved water right claims.

The Court lacks jurisdiction over Plaintiff's first claim, that the State Defendants are bound by, and are therefore estopped from repudiating, the alleged quantification of Plaintiff's reserved water rights in the 1965 Deferral Agreement. The State Defendants were not parties to the Deferral Agreement and cannot, therefore, be bound by it. To the extent Plaintiff's fourth claim seeks a declaration regarding the validity of the Deferral Agreement, the Court lacks jurisdiction as to the State Defendants.

### A. The State Defendants were not parties to the Deferral Agreement.

The State Defendants were not parties to the Deferral Agreement, ECF No. 22-1, and thus, cannot be bound by it. The Agreement's preamble paragraph describes its parties as "the United States of America acting through the [BOR and BIA, DOI], the Ute Indian Tribe of the Uintah and Ouray Indian Reservation . . . and the [CUWCD], a public corporation." *Id*. at 1. The concluding signature blocks have places for each of the parties to sign the agreement, but the State of Utah, the State Engineer, and the Governor are not listed. *Id*. at 7. The State Engineer is referenced in the document only with respect to water right records. *Id*. at 2, 4. Indeed, Plaintiff's complaint admits the State was not a party to the Deferral Agreement. *See* Compl. ¶ 155 (listing signatory parties as "Defendants BIA, USBR, CUWCD, and Ute Tribe"). Thus, the State Defendants simply cannot be bound by an agreement to which they were not parties. *See*, *e.g.*, *E.E.O.C. v. Waffle House, Inc.*, 534 U.S. 279, 294 (2002) ("It goes without saying that a contract

cannot bind a nonparty."); *Ebling v. U.S. Dep't of Justice*, 796 F. Supp. 2d 52, 63 ("[i]t is a fundamental and unobjectionable principle that a contract cannot bind a non-party—*i.e.*, someone who has not assented to be bound to its terms") (citing *Waffle House, Inc.*, 534 U.S. at 294).

**B. CUWCD could not bind the State to the Deferral Agreement.**

Plaintiff asserts that in 1973 "the Utah State Legislature passed a Concurrent Resolution in the 40th Legislature, signed by the Utah Governor, recognizing that the [CUWCD] had bound the State of Utah to the conditions and promises made to Plaintiff under the 1965 Deferral Agreement." Compl. ¶ 166. This allegation is both factually and legally incorrect.

Water conservancy districts are political subdivisions of the State. *See* Utah Code Ann. §§ 17B-1-102(35); 17B-1-102(13)(b)(ii)(J); 17B-1-103(1). *See also Jenkins v. Jordan Valley Water Conservancy Dist.*, 321 P.3d 1049, 1050 (Utah 2013) (describing Jordan Valley Water Conservancy District as "a political subdivision of Utah that operates about 275 miles of pipelines through Salt Lake County."). Such political subdivisions can only act within the powers granted to them by statute. *See State v. Hutchinson*, 624 P.2d 1116, 1121 (Utah 1980). Indeed, the statutes governing water conservancy districts in the State explicitly limit the districts' power, stating that "[e]ach water conservancy district is governed by and has the powers stated in" Utah Code Ann. §§ 17B-2a-1001 *et seq.* (which applies specifically to water conservancy districts) and § 17B-1-101 *et seq.* (which applies to all local districts). While these statutes provide some authority for such districts to enter into contracts or agreements, nothing in the statutes provides the districts the authority to bind the State sovereign, or any of its officers, to any such agreement. *Id.* §§ 17B-2a-101; 17B-1-101. If the legislature had intended to provide this authority to water conservancy districts, "it could have easily provided an express grant of

authority within either section. . . ." *Metro. Water Dist. of Salt Lake and Sandy v. Questar Gas Co.*, 361 P.3d 709, 714 (Utah 2015) (citing *Standard Fed. Sav. & Loan Ass'n v. Kirkbride*, 821 P.2d 1136, 1138 (Utah 1991) ("If that is what the legislature intended to accomplish, it certainly kn[ew] how to do so."). Thus CUWCD lacks the authority to bind the State Defendants to the Deferral Agreement.

### C.  A State concurrent resolution does not have the force of law.

Even if the 1973 Legislative Concurrent Resolution Plaintiff cites had purported to give CUWCD the authority to bind the State to the Deferral Agreement, Plaintiff's assertion would still fail to state a claim on which relief can be granted. The critical language on which Plaintiff relies, appears in a "whereas" clause of the resolution, and states, in relevant part, "the State of Utah and [CUWCD] have negotiated and executed a contractural [sic] agreement recognized in the Colorado River Basin Project Act of 1968 with Indian Tribes for a deferral of water use. . . ." Laws of Utah, 1973 (1st Special Session) p. 26 (H.C.R. No. 2).[6]

It is important to note that the resolution contains several factual inaccuracies. First, there is no evidence suggesting the State helped "negotiate" the Deferral Agreement. Second, as discussed above, the Deferral Agreement itself demonstrates the State did not "execute" the agreement. ECF No. 22-1. Third, "Indian Tribes" were not involved; only one "Tribe" participated. *Id.*

Moreover, the only portion of the Resolution that mentions the Deferral Agreement is a "whereas" clause that simply explains, to the best of the drafter's understanding, why the resolution was necessary. *See* ECF No. 37-1. The "resolved" clause nowhere mentions the Deferral Agreement, nor does it in any way bind the State to it. *Id.* The clause simply requests

---

[6] *See* ECF No. 37-1.

completion of the Central Utah Project, requesting that "contracts be let immediately to continue construction on the Bonneville Unit as planned and to proceed with the planning and construction of all other authorized units (Upalco, Uintah, Jensen) of the Central Utah Project in order to avoid water rationing, economic limitations and other hardships by the citizens of Utah." *Id*.

Regardless of the factual inaccuracy of the Concurrent Resolution, and even assuming, *arguendo*, the intent of the resolution was to bind the State to the Deferral Agreement, Plaintiff fails to state a claim on which relief can be granted because resolutions of the Utah Legislature are not legally binding. *See*, *e.g.*, *Grand Cnty. v. Emery Cnty*, 52 P.3d 1148, 1154 (Utah 2002) ("a resolution of the Utah Legislature is not legislation and does not have the force or effect of law") (citing *Salt Lake City v. State Tax Comm'n*, 813 P.2d 1174, 1177 (Utah 1991); 73 Am.Jur.2d Statutes § 3 1974)). Rather, a resolution is "only a consensus as to particular policy." *Mountain States Legal Found. v. Utah Public Service Comm'n*, 636 P.2d 1047, 1057 (Utah 1981). Thus, the 1973 Concurrent Resolution simply expressed the State's desire that the federal government continue construction of the CUP. It does not—and, legally, could not—retroactively bind the State to the terms of the Deferral Agreement or give Plaintiff a claim upon which this Court can grant relief.

### D.  The parties to the Deferral Agreement did not and could not have quantified Plaintiff's water rights.

Regardless of whether the State was a party to the Deferral Agreement, this Court lacks jurisdiction here to adjudicate Plaintiff's water claims.[7] The parties to the Deferral Agreement could never have quantified Plaintiff's water rights—even if the State had helped negotiate, had

---

[7] The State Defendants also join the Federal Defendants' arguments as to these claims.

signed, or was bound by the Deferral Agreement.[8] Federal reserved water rights may only be

determined by a court, either in a state court general adjudication proceeding, or a similar federal

court proceeding. *See Colo. River Water Conservation Dist. v. U.S.*, 424 U.S. 800, 811 (1976)

(holding court proceedings are implied where "all water users on a stream, in practically every

case, are interested and necessary parties"); *Jensen v. Jones*, 270 P.3d 425, 428 ("[t]he statute

governing change application proceedings leaves the adjudication of the rights which the

applicant may have to the courts in another kind of a proceeding") (internal quotation marks and

citations omitted). In either type of proceeding, the United States claims its reserved rights on

behalf of a tribe. *See Shoshone – Bannock Tribes v. Reno*, 56 F.3d 1476, 1482 (D.C. Cir. 1995)

(the United States holds water rights in trust for the tribe, but tribes are dependent on the U.S. for

their water claims; the tribe "cannot force the government to take a specific action [on its view of

water right claims] unless a treaty, statute, or agreement imposes, expressly or by implication,

that duty"). *See also Nat'l Wildlife Fed'n v. Andrus*, 642 F.2d 589, 612 (D.C. Cir. 1980)

("[w]ithout an unambiguous provision by Congress that clearly outlines a federal trust

responsibility, courts must appreciate that whatever fiduciary obligation otherwise exists, it is a

limited one only.").

With passage of the McCarran Amendment, 43 U.S.C. 666(a), Congress consented to

joinder of the United States for the adjudication of rights to the use of water of a river system or

other water source, and this consent extends to the adjudication of tribal water rights. *See Colo.*

---

[8] In any event, Plaintiff repudiated the Deferral Agreement in a 1989 Ute Tribe Business Committee's resolution. That resolution says, in relevant part: "Because the non-Indian parties to the 1965 Deferral Agreement have materially and injuriously breached their obligations to the Ute Indian Tribe, *the Tribe declares the agreement no longer valid*." Uintah and Ouray Tribal Bus. Comm. Res. 89-176 (1989) (approved and signed unanimously) (emphasis added). *See* Ex. A.

*River*, 424 U.S. at 809-13. State and federal courts each have jurisdiction to adjudicate tribal reserved water claims. "Regardless of whether a stream adjudication is resolved by consent, negotiation, or litigation, the underlying adjudicated water right must arise under either federal or state law." *U.S. v. Orr Water Ditch Co.*, 309 F.Supp.2d 1245, 1248 (D. Nev. 2004).

Even if a contest over reserved water right claims is resolved by settlement, that settlement must be presented to a court for approval. *See generally Arizona v. California*, 547 U.S. 150, 152 (2006) (approving settlement of the Fort Yuma Indian Reservation reserved water right claims); *Nevada v. U.S.*, 463 U.S. 110, 118 (1983) (discussing a settlement of tribal reserved water rights presented to and adopted by a federal court); *Colo. River*, 424 U.S. at 811 (adjudicated water rights are "interlocking" and thus "any order or action affecting one right affects all such rights" necessitating the involvement of "all water users on a stream, in practically every case"); *State ex rel. State Engineer v. U.S.*, 425 P.3d 723, 729 (N.M. App. 2018) (discussing settlement of tribal reserved water rights presented to and approved by a state court). In a Utah general adjudication proceeding, the State Engineer presents a reserved water rights settlement to the adjudication court in the form of what Utah statutes call a proposed determination—her recommendation as to how the court should determine and quantify the rights. *See* Utah Code Ann. § 73-4-11. Thereafter, individuals holding rights affected by the proposed determination may raise objections. *Id*. Generally, as part of a reserved water rights settlement, the State Engineer agrees that it, along with the United States on behalf of a tribe, will defend the proposed determination recommending the reserved rights against all objections until the court enters an appropriate decree. *Id*. Upon completion of this judicial process, the court enters a decree quantifying the reserved water rights. *See* Utah Code Ann. §§ 73-4-12 and 73-4-15. While the parties may agree to seek approval from the court for a certain quantity of

water, reserved rights are not determined or quantified until the court enters its decree. *See, e.g.*, *United States v. Adair*, 723 F.2d 1394, 1406 (9th Cir. 1983) (noting "[a]ctual quantification of the [reserved] rights [at issue] will be left for judicial determination, consistent with the decree in this action, by the State of Oregon under the provisions of [the McCarran Amendment]."). *See also Little Cottonwood Water Co. v. Kimball*, 289 P.2d 116, 117 (Utah 1930) ("the determination of existing rights . . . is a peculiarly judicial function"). Plaintiff's assertions that the Deferral Agreement "quantified" Plaintiff's water right claims, are simply incorrect and impossible as a matter of law.

Further, the McCarran Amendment only waives the United States' immunity where it is joined as a defendant in a general stream adjudication. 43 U.S.C. § 666(a). *See also Dugan v. Rank*, 372 U.S. 609, 618-19 (1963); *United States v. Dist. Court for Eagle Cnty.*, 401 U.S. 520, 525 (1971); *Gardner v. Stager*, 103 F.3d 886, 888 (9th Cir. 1996). In the case of the Uinta Basin (the area in which Plaintiff's reservation is located), the Utah State Engineer has not formally joined the United States. *See In the Matter of the General Determination of all the Rights to the Use of Water, Both Surface and Underground, Within the Drainage Area of the Uinta Basin in Utah*, Dist. Ct. for Duchesne County, State of Utah, Civil No. 56080056 CV ("Uinta Basin Adjudication"). Therefore, no claims from the United States are due, including reserved water right claims on behalf of Plaintiff. Formal joinder of the United States in the Uinta Basin Adjudication however, would give the state district court jurisdiction to quantify Plaintiff's water rights.

The Court lacks jurisdiction over the State Defendants as to Plaintiff's first and fourth claims because the State Defendants were not parties to the Deferral Agreement, which did not and could not have quantified Plaintiff's reserved water right claims.

### III.    Plaintiff's fourth claim is barred by laches.

Plaintiff's fourth claim is also barred by laches because Plaintiff unreasonably delayed filing for over 25 years. If a party is alleged to have violated the terms of a compact or agreement, its opponent must ask the court for an equitable remedy, which is then subject to the usual equitable defenses. For this reason, the equitable doctrine of laches governs the timeliness of equitable claims challenging compacts or agreements. *Biodiversity Conservation Alliance v. Jiron*, 762 F.3d 1036, 1096 (10th Cir. 2014) (affirming dismissal of breach of contract claim for six-year delay in bringing case). *See also DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 162 (1983); *Brennan v. Nassau Cnty*., 352 F.3d 60, 63-64 (2d Cir. 2003); *Bergman v. Mich. State Transp. Comm'n*, 665 F.3d 681, 683-84 (6th Cir. 2011). Here, Plaintiff's claim regarding the 1990 Compact and CUPCA is barred by laches because Plaintiff delayed filing its claim for over 25 years.

The laches defense bars a party's dilatory claim. *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 121-22 (2002). It stems from the principle that "equity aids the vigilant and not those who slumber on their rights." *Kansas v. Colorado*, 514 U.S. 673, 687 (1995). Laches bars a claim when there is: "(1) lack of diligence by the party against whom the defense is asserted, and (2) prejudice to the party asserting the defense." *Nat'l R.R. Passenger Corp.*, 536 U.S. 121-22. *See also City of Sherrill, N.Y. v. Oneida Indian Nation of N.Y.*, 544 U.S. 197, 217-19 (2005) (applying laches to deny relief for Indian Tribe for long delay in filing claims).

Plaintiff unreasonably delayed filing this claim. Plaintiff has been aware of the existence and content of the 1990 Compact and CUPCA since 1992. And yet Plaintiff waited over 25 years to file the claim. Plaintiff has failed to offer any basis for its delay in filing.

In addition, the applicable state statute of limitations highlights the unreasonableness of Plaintiff's delay. *See Holmberg v. Armbrecht*, 327 U.S. 392, 396 (1946) (finding statutes of limitations relevant "for the light they may shed in determining that which is decisive for the chancellor's intervention, namely, whether the plaintiff has inexcusably slept on his rights so as to make a decree against the defendant unfair."). In Utah, the statute of limitations for contract actions is six years, Utah Code Ann. §§ 78B-2-309(1). Here, Plaintiff's cause of action about the 1990 Compact and CUPCA would have accrued many years ago. And under the six-year federal statute of limitations, Plaintiff's motion also would be time-barred.[9] The relevant statute of limitations states that "every civil action commenced against the United States shall be barred unless the complaint is filed within six years after the right of action first accrues." 28 U.S.C. § 2401(a). Whether applying the state or federal statutes of limitations, Plaintiff's claim is time-barred.

Moreover, the State has relied on the finality of the Compact, as Congress ratified it and as it is codified in CUPCA, as part of what CUPCA calls "Title V—UTE INDIAN RIGHTS SETTLEMENT." § 503(a). The State has assumed that, as part of the negotiated settlement reached in CUCPA, which incorporated by reference and ratified the 1990 Compact, Plaintiff would receive the amount of water the Compact indicates. The State has planned its future use of the Colorado River based on what Plaintiff would receive, has educated the public of that fact, and has otherwise planned accordingly. *See*, *e.g.*, Utah Code Ann. § 73-21-103. But this reliance comes only in the context of the settlement that CUPCA effectuated. Plaintiff has also relied on

---

[9] The State Defendants join in the Federal Defendants' arguments that Plaintiffs' claims regarding the Deferral Agreement, the 1990 Compact, and CUPCA are time barred.

and been enriched by the settlement by accepting significant monetary payments under CUPCA. Compl. ¶¶ 193, 198.

Plaintiff's unreasonable delay in filing this claim while all the time accepting the monetary payments CUPCA provides materially prejudiced the State, and thus, Plaintiff's fourth claim is barred by laches.[10]

## IV.   The Tenth Circuit's *Ute* line of cases did not adjudicate Plaintiff's water right claims.

The Court should also dismiss the second claim for failure to state a claim. Plaintiff asserts that claim, asking this Court to declare that the Tenth Circuit addressed and determined the status of the administration of Plaintiff's federal reserved water right claims, in its *Ute* line of cases. Compl. ¶ 244-49. Plaintiff's second claim essentially asks this Court for an advisory interpretation of opinions of sister courts and as such does not state an actionable claim.

Plaintiff erroneously argues that "[t]he question of the State of Utah's jurisdictional authority over tribal lands within the Uintah and Ouray Reservation has been fully, fairly, and conclusively adjudicated between the parties, and that question was resolved against the State and in favor of the Tribe by the United States Court of Appeals for the Tenth Circuit in the *Ute* line of cases." Compl. ¶ 246.

The Tenth Circuit's *Ute* line of cases simply did not address Plaintiff's reserved water rights claims or authority to administer or regulate them. In fact, the phrase "water rights" appears in only two of the seven cases, neither of which is relevant to the legal analysis or holding in the cases. *See Ute Indian Tribe v. Utah*, 521 F. Supp. 1072, 1119, 1126, 1138 (D. Utah 1981) (discussing the Ute Tribe history); *Ute Indian Tribe v. Utah*, 935 F. Supp. 1473,

---

[10] Any claims related to the 1965 Deferral Agreement are also barred by laches for the same reasons.

1500 (discussing another case, *Hackford v. Babbitt*, 14 F.3d 1457 (10th Cir. 1994)). None of the orders comprising the *Ute* line of cases concerns the adjudication, regulation, administration, or authority over water rights claims in the Uinta Basin. Accordingly, Plaintiff's second claim, and the strained invocation of res judicata and estoppel, Compl. ¶¶248-49, fails to state a claim for relief.

More importantly, the Tenth Circuit's *Ute* line of cases could not have addressed tribal reserved water right claims because jurisdiction for adjudicating such claims is addressed by the McCarran Amendment, as explained above. *See supra* at Sec. II. D. And critically, the Federal Defendants were not parties to the Tenth Circuit litigation. Therefore, because the Tenth Circuit did not consider or adjudicate Plaintiff's water right claims in the *Ute* line of cases, nor did it provide Plaintiff with authority to administer them, the Court should dismiss the second claim for failure to state a claim.

## V.     The sixteenth claim fails to state a claim and should be dismissed.

Plaintiff's sixteenth claim should be dismissed for failure to state a claim against the State Defendants.[11] The sixteenth claim seeks relief under 42 U.S.C. §§ 1981 and 1983, and Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d. The Claim seeks "[a] decree declaring that the State and Federal Defendants' actions alleged herein violate the due process and equal protections [sic] guarantees under the Fifth and Fourteenth Amendments to the U.S. Constitution, 42 U.S.C. §§ 1981, and 1983, and Title VI of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000d", Compl. at 104 ¶ 21, "[m]onetary damages as permitted by law, *id.* ¶ 23, and an order of costs and attorney fees "to the extent permitted by law, including 42 U.S.C. § 1988(b)." *Id.* ¶ 24.

---

[11] The State Defendants also join the Federal Defendants' arguments as to this claim.

Despite including three federal statutes one claim, the sixteenth claim should not survive against the State Defendants. Plaintiff is not entitled to relief under § 1983. The State, and the Individual State Defendants in their official capacity, are not "persons" subject to suit. Plaintiff has not pleaded any facts showing that the Individual State Defendants—Gary Herbert, the current Governor of Utah, and Teresa Wilhelmsen, the current Utah State Engineer—have undertaken any actions whatsoever violative of the U.S. Constitution or Plaintiff's constitutional rights. Plaintiff cannot seek to hold Governor Herbert and Ms. Wilhelmsen liable for the alleged constitutional torts of others, of any inferiors, or of long-gone successors. And to the extent Plaintiff's claims seek injunctive or declaratory relief against the Individual State Defendants, Plaintiff fails to state a current, ongoing constitutional violation to allow it to proceed under *Ex parte Young*. 209 U.S. 123, 159-60 (1908).

Plaintiff is not entitled to relief under § 1981 because § 1981 does not provide a private right of action against state actors. And Plaintiff is not entitled to relief under Title VI, because those claims cannot be brought against individuals, because the State is not a "program or activity" subject to Title VI, and because Plaintiff has not sufficiently alleged intentional discrimination.

**A.  Plaintiff has failed to state a claim under § 1983.**

Section 1983 provides a civil remedy against a "person" who "under color of [state law], subjects, or causes to be subjected, any [person] to the deprivation of any rights, privileges, or immunities secured by the Constitution and [federal] laws . . . ." 42 U.S.C. § 1983. But Plaintiff's claims against the State, the Individual State Defendants (in their official or individual capacities), or a claim for injunctive or declaratory relief, cannot survive.

1.   **Plaintiff cannot bring a § 1983 claim against the State.**

The U.S. Supreme Court has held that, as a matter of statutory construction, § 1983 claims may not be brought against a state. "[N]either a state nor its officials acting in their official capacities are 'persons' under § 1983." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). *U.S. ex rel. Long v. SCS Business and Tech. Inst., Inc.*, 173 F.3d 870, 874 (D.C. Cir. 1999) ("in common usage, the term person does not include the sovereign and statutes employing the word are ordinarily construed to exclude it"). Therefore, Plaintiff may not bring a § 1983 claim against the State.

2.   **Plaintiff's § 1983 claims against the Individual State Defendants are insufficient.**

Plaintiff's § 1983 claims likewise cannot proceed against Governor Herbert and Ms. Wilhelmsen. First, it is unclear if Plaintiff is suing Governor Herbert and Ms. Wilhelmsen in their official or individual capacities. Plaintiff has plead that it brings its action "against . . . the Honorable Gary Herbert, in his capacity as Governor of Utah, and Teresa Wilhelmsen, P.E. in her capacity as the Utah State Engineer and Director of the Utah Division of Water Rights." Compl. ¶ 1. To the extent Plaintiff's Complaint should be read as a complaint against the Individual State Defendants in their official capacities, the § 1983 claim is barred because a § 1983 claim against an individual state official acting in his or her official capacity "is no different from a suit against the State itself." *Will*, 491 U.S. at 71. Plaintiff's § 1983 claims for damages cannot be brought against these two State officials in their official capacities.

Plaintiff has not pleaded a claim for damages against the Individual State Defendants in their individual capacities. "[G]overnment officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*." *Iqbal*, 556 U.S. at 676. As such, for a plaintiff to proceed against a government official "a plaintiff must

plead that each Government-official defendant, through the official's own actions, has violated the constitution." *Id.* Plaintiff has failed to do so. Plaintiff mentions Governor Herbert in the complaint only twice—both times merely listing Governor Herbert as a defendant. Compl. ¶¶ 1, 14. Ms. Wilhelmsen gets the same treatment, again being mentioned only in the complaint as a defendant. *Id.* ¶¶ 1, 15. Plaintiff does not cite *any* of the Individual State Defendants' "own actions," much less sufficient actions to show a plausible claim of a constitutional violation.

### 3. Plaintiff has not pleaded a claim for declaratory or injunctive relief under § 1983.

Additionally, Plaintiff cannot bring § 1983 claims against Governor Herbert and Ms. Wilhelmsen for declaratory relief. State officials are subject to suit in their official capacity for declaratory and injunctive relief only for ongoing violations of federal law. *See Ex parte Young*, 209 U.S. at 159-60. If there are no "ongoing violations of federal law," then declaratory and injunctive relief are improper. *Green v. Mansour*, 474 U.S. 64, 71, 73 (1985). In such a circumstance, the Eleventh Amendment "does not permit judgment against state officers declaring that they violated federal law in the past." *P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146 (1993).

Plaintiff does not allege that either Governor Herbert or Ms. Wilhelmsen are currently violating federal law in any specific way. Rather, Plaintiff asserts that "the events of 1905-1910 established a pattern of invidious discrimination on the part of the Defendants directed against the Ute Indians . . . that continues to this day." Compl. ¶ 351. Plaintiff makes general allegations that CUP facilities were constructed to disadvantage Plaintiff, Compl. ¶ 355, but fails to allege facts showing that Governor Herbert or Ms. Wilhelmsen acted "for the purpose of discriminating on account of race. . . ." *Iqbal*, 556 U.S. at 677. Plaintiff's attempt to convert the alleged sins of

the past into the constitutional violations of the present and future are not enough to save its §

1983 claim.

Regardless of whether Plaintiff's § 1983 claim is read to seek damages or injunctive

relief, against the individuals in their individual or official capacity, or against the State, the

result is the same: clear judicial authority demands that the sixteenth claim under § 1983 be

dismissed.

### B. Plaintiff cannot state § 1981 claims against the State or the Individual State Defendants.

Plaintiff's § 1981 claims suffer the same fate as its § 1983 claim. "Section 1981 does not

create a private right of action against state actors. . . ." *Campbell v. Forest Preserve Dist. of

Cook Cnty., Ill.*, 752 F.3d 665, 671 (7th Cir. 2014); *see also id.* (noting agreement of all circuits

except the Ninth Circuit on this point); *accord Sledge v. Dist. of Columbia*, 869 F. Supp. 2d 140,

145 (D.D.C. 2012) (similarly dismissing plaintiff's § 1981 complaint against the District of

Columbia). Rather, when state actors are sued for violations of § 1981, "the explicit remedial

provisions of § 1983 . . . control." *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 731 (1989).

Because Plaintiff cannot bring a § 1981 claim against either the State or the Individual State

Defendants, and Plaintiff's claims cannot be asserted through § 1983, this claim should also be

dismissed.

### C. Plaintiff's Title VI Claims fail to state a claim.

Finally, Plaintiff includes as part of the sixteenth claim a citation to Title VI of the Civil

Rights Act of 1964, 42 U.S.C. § 2000d. That statute provides that "[n]o person in the United

States shall, on the ground of race, color, or national origin, be excluded from participation in, be

denied the benefits of, or be subjected to discrimination under any program or activity receiving

Federal financial assistance." *Id.* A "program or activity" includes "(A) a department, agency,

special purpose district, or other instrumentality of a State or of a local government; or (B) the

entity of such State or local government that distributes such assistance . . . ." 42 U.S.C. § 2000d-

4a. The Supreme Court has implied a private right of action, in certain circumstances, that allows

individual plaintiffs to sue for damages or injunctive relief under Title VI. *Alexander v.

Sandoval*, 532 U.S. 275, 279–80 (2001). However, for several reasons, Title VI does not provide

Plaintiff with a claim against the State Defendants in these circumstances.

First, Plaintiff lacks a claim under Title VI because Title VI protects against

discrimination in any "program or activity," "because the statute is based on [Congress's]

spending power," and because there can be no individual liability under Title VI. *Shotz v. City of

Plantation, Fla.*, 344 F.3d 1161, 1169-70 (11th Cir. 2003); *accord Machie v. Youssef*, 824 F.

Supp. 2d 1, 3 (D.D.C. 2011) *Mwabira-Simera v. Howard Univ.*, 692 F. Supp. 2d 75, 50 (D.D.C.

2010). Because the "law is clear that Title VI does not allow liability against individual

defendants," *Machie*, 824 F. Supp. at 3, Plaintiff cannot bring a Title VI claim against the

Individual State Defendants in this case.

Second, Plaintiff lacks a claim under Title VI because the State itself cannot be

considered a "program or activity" under Title VI, and therefore, plaintiff may not simply sue

"the State" for an alleged Title VI violation. *See*, *e.g. Assoc. of Mexican–American Educators

v. State of Cal.,* 195 F.3d 465 (9th Cir.1999), *rev'd in part on other grounds*, 231 F.3d 572 (9th

Cir. 2000) (en banc) (state itself cannot be considered a "program or activity" as defined

in Title VI); *Comfort ex rel. Neumyer v. Lynn Sch.*, 131 F. Supp. 2d 253, 255 (D. Mass. 2001).

Title VI was not "intended to sweep in the whole state or local government when a single

program or activity or department was found to be liable for discrimination." *Hodges v. Pub.

Bldg. Comm'n of Chicago.*, 873 F. Supp. 128, 131 (N.D. Ill. 1995) (quoting *Schroeder v. City of

*Chicago,* 927 F.2d 957, 962 (7th Cir. 1991)) (internal quotation marks omitted). Rather, the only proper defendant is the "department or agency" of a state government "which receives aid." *A.D.E. Food Servs. Corp. v. City of Phila.*, No. Civ. A. 95-7485, 1996 WL 590906, at * (E.D. Penn. Oct. 11, 1996) (quoting *Rannells v. Hargrove*, 731 F. Supp. 1214, 1223 n.11 (E.D. Penn. 1990)).

In this case, Plaintiff has not named a "department or agency" of the State, to which any Title VI liability would attach[12]. *See, e.g.*, Compl. ¶ 354. Thus the State is not a proper defendant for a Title VI claim.

Finally, even if Plaintiff could proceed against the State for its Title VI claim, Plaintiff's claim must be dismissed because it has failed to plead that the State (or any State actor) intentionally discriminated against it on the basis of race or other protected class. "Title VI itself directly reaches only instances of intentional discrimination." *Sandoval*, 532 U.S. at 281 (quoting *Alexander v. Choate*, 469 U.S. 287, 293 (1985) (alterations in *Sandoval* omitted). Plaintiff has not alleged any facts articulating any *intentional discrimination* on the part of the State or any Individual State Defendant (at least not within the four-year statute of limitations).[13] Plaintiff has not linked the allegedly wrongful actions taken by the State vis-à-vis the water rights at issue to Plaintiff's "race, color, or national origin." *Delbert v. Duncan*, 923 F. Supp. 2d 256, 261 (D.D.C. 2013). Rather, Plaintiff makes unsupported, conclusory allegations that generic "Defendants"

---

[12] Further, the Complaint contains no allegation that CUWCD has used federal funds for any purpose other than those for which they were authorized and appropriated.

[13] Because Title VI lacks its own statute of limitations, courts borrow "the statute of limitations from 42 U.S.C. § 1981 and § 1983 which in turn rely on the respective personal injury statute of limitations in a jurisdiction." *Richards v. Duke Univ.*, 480 F. Supp. 2d 222, 237–38 (D.D.C. 2007). Utah has a four-year statute of limitations for personal injuries which is used as the statute of limitations for § 1983 cases. *Arnold v. Duchesne Cnty.*, 26 F.3d 982, 989 (10th Cir. 1994); *Sheets v. Salt Lake Cnty.*, 45 F.3d 1383, 1387 (10th Cir. 1995).

decisions vis-à-vis the water in question "will result in the discriminatory deprivation of water and water-infrastructure resources to the Ute Tribe and its members, while their actions simultaneously insure to the benefit of non-Indian white-majority population of Utah . . . ." Compl. ¶ 356. These sorts of conclusory allegations are insufficient to state a claim of purposeful discrimination *because of* race. *Iqbal*, 556 U.S. at 677.

The Court should dismiss Plaintiff's sixteenth claim against the State Defendants for failure to state a claim on which relief can be granted.

## <u>CONCLUSION</u>

The State Defendants respectfully request this Court to dismiss the Second Amended Complaint in its entirety. The State Defendants adopt and join the United States' Motion to Dismiss as to all claims. Further, the first, second, fourth, and sixteenth claims for relief, which Plaintiff directs against all Defendants, including the State Defendants, should be dismissed pursuant to Rule 12(b)(1) and Rule 12(b)(6) for failure to state a claim and lack of subject matter jurisdiction.

Respectfully submitted this 16th day of July, 2020.

> */s/ Alison D. Garner*
> Alison D. Garner (DC Bar No. 983858)
> Assistant Attorney General
> STATE OF UTAH
> Office of the Utah Attorney General
> 160 East 300 South, 5th Floor
> P.O. Box 140857
> Salt Lake City, Utah 84114
> (801) 366-0353
> alisongarner@agutah.gov

Norman K. Johnson (UT Bar No. 3816)
STATE OF UTAH
Office of the Utah Attorney General
1594 West North Temple #300
Salt Lake City, Utah 84116
(801) 538-7227
normanjohnson@agutah.gov
*Counsel for State Defendants*

**CERTIFICATE OF SERVICE**

I hereby certify that on July 16, 2020, I filed the foregoing with the CM/ECF system, which will provide service to counsel of record.

_ *Alison D. Garner* _