## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UTE INDIAN TRIBE OF THE UINTAH AND OURAY INDIAN RESERVATION, | |
| Plaintiff, | Civil No. 1:18-cv-00547-RMC |
| v. | |
| THE UNITED STATES DEPARTMENT OF THE INTERIOR, DAVID BERNHARDT, in his official capacity as Secretary of the Department of the Interior, the BUREAU OF RECLAMATION, and the BUREAU OF INDIAN AFFAIRS, | |
| and | |
| THE STATE OF UTAH, CENTRAL UTAH WATER CONSERVANCY DISTRICT, a political subdivision of the State of Utah, GARY HERBERT, in his capacity as Governor of Utah, and TERESA WILHELMSEN, P.E., in her capacity as Utah State Engineer and Director, Utah Division of Water Rights, | |
| Defendants. | |

## REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS

In its Second Amended Complaint, the Ute Tribe has asked this Court to issue a declaratory judgment regarding the Tribe's alternative interpretations of the legal status of water rights.  Compl. ¶¶ 241, 256, ECF 57.  Plaintiff's Sixteenth Claim for Relief seeks damages for alleged civil rights claims §§ 1983, 1981, and Title VI of the Civil Rights Act of 1964 also fails

to state a claim and should be dismissed as a matter of law.[1]  None of the Tribe's claims and requests for declaratory relief, either individually or together states a justiciable claim upon which this Court could provide the declaratory relief the Tribe seeks.  As to the declaratory judgment claims the issue now, on Motion to Dismiss, is not what interpretation the Court should declare as to each of Tribe's claims, but whether this Court should assert jurisdiction and offer an advisory declaration at all.

Common to each of the Tribe's claims is the request for declaratory relief.  Compl. ¶¶ 243, 249, 262, ECF 57.  Of course, any claim for declaratory relief in federal courts must satisfy the requirements for declaratory judgment.  Here, despite citing the Declaratory Judgment Act as a basis for its claims, (Compl. ¶ 19 ECF 57), the Tribe has not otherwise pleaded or satisfied the requirements of that Act. The Tribe has not demonstrated an "actual controversy, within the jurisdiction" of this Court and so, on that basis alone, the Court should dismiss Plaintiff's declaratory relief claims under Rule 12(b)(1).  The civil rights claims fail to state a claim because the state defendants are not "persons" or appropriate parties under §§1981 and 1983.

In opposition, the Tribe has not substantively supported its claims against the State Defendants.  Rather, the Tribe has submitted a three-volume appendix of documents and cites to recent Declarations of former Tribal committee members, and of counsel herself.[2]

---

[1] These claims are also asserted against the United States and the Central Utah Water Conservancy District, who have filed separate Motions to Dismiss. The arguments made in this Reply are in addition to those made in co-defendants' motions and Reply memoranda as to these claims, which arguments State Defendants hereby incorporate and adopt by reference.

[2] State Defendants object to these opinion declarations as inadmissible hearsay and irrelevant and generally object to the extraneous and voluminous appendices and to any reference in Tribes memorandum relying on documents that are not pleadings, documents incorporated into pleadings, or items over which the Court may take judicial notice. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 569, 570 (2007).

In the absence of an actual controversy involving the State Defendants, this Court lacks jurisdiction to declare the Tribe's interest under any of the claims raised in I, II, and IV.  Those claims should be dismissed under Rule 12(b)(1) and Claim XVI fails to state a claim upon which relief can be granted and should be dismissed under 12(b)(6).  As stated in its Memorandum in Support, and in Reply here, the State Defendants request that the Court dismiss this action in its entirety as a matter of law.

I.      **Plaintiff has Failed to State an Actual Case or Controversy Required for Declaratory Judgment Jurisdiction**

The Declaratory Judgment Act provides that "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."  28 U.S.C § 2201.

The phrase "case of actual controversy" refers to the type of "cases" and "controversies" that are justiciable under Article III.  *MedImmune, Inc. v Genentech, Inc.*, 549 U.S. 118, 126 (2007).  Before the court may provide declaratory relief, the actual dispute between the parties "must be definite and concrete, touching the legal relations of parties having adverse legal interests[;]" and it must be "real and substantial" and "admit[] of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts."  *Aetna Life Ins. Co. of Hartford, Conn. v. Haworth,* 300 U.S. 227, 240-241 (1937).  The Tribe must demonstrate an injury-in-fact, a causal connection between the challenged conduct and the injury, and redressability by the requested remedy.  *MedImmune,* 549 U.S. at 127.  When determining whether an actual case or controversy exists for purposes of Article III jurisdiction, the court must examine "whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal

interests of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Golden v. Zwickler*, 394 U.S. 103, 108 (1969).

In this case, the Tribe has not alleged an actual controversy of any immediacy and reality between the Tribe and the State Defendants.  The Tribe has not alleged any "challenged conduct" by State Defendants that is causally connected to an "injury in fact" to the Tribe.  The "controversy" that the Tribe seeks to resolve through a declaratory judgment and injunction is hypothetical.

The Tribe seeks a *res judicata, collateral estoppel and equitable estoppel* ruling barring anyone but the Tribe from asserting administrative, regulatory, legislative, and adjudicatory jurisdiction over the Tribe's alleged Reserved Water Rights.  The scope of potential claims that the Tribe seeks to bar, and the certainty that any of these claims will ever be filed, are wholly unknown.  Future claims regarding the administration and regulation of water rights in the Uintah Basin could raise any number of issues - some of which may never have been litigated in prior actions or never will be litigated in future actions.  The Tribe, in essence, is asking that it win any such case before it is commenced.  Such unasserted, unthreatened, and unknown claims do not present an immediate or real threat to the Tribe.

The Tribe's attempt to engage in premature litigation over affirmative defenses in the wrong forum is exactly this kind of premature adjudication over abstract arguments taken outside the context of the proper litigation.  In the absence of an "actual controversy" between the parties, the Court lacks jurisdiction and should dismiss the Tribe's request for declaratory relief. *MedImmune*, 549 U.S. at 127.

A.    *Request for a Declaration Regarding the Deferral Agreement Does Not Constitute a Substantial Controversy of Sufficient Immediacy.*

In 1965 the Ute Tribe, the Central Utah Water Conservancy District, and the United States entered into the Deferral Agreement, under which the Tribe agreed to defer use of water on 15,242 acres of tribal land.  Deferral Agreement.  ECF 22-1.  In its claims number I and IV, the Tribe asks this Court to declare the Deferral Agreement is a binding quantification of the Tribe's reserved water rights, or "void *ab initio*", and the Defendants are estopped from arguing otherwise.  Compl. ¶ 243.  The State Defendants were not party to the Deferral Agreement.  And, as noted below, the Tribe's interests arising out of the Deferral Agreement – including claims that it did not receive all of the benefits contemplated under the Agreement – were definitively addressed and resolved in the 1992 enactment of Title V of the Central Utah Project Completion Act.  ("CUPCA"), Pub. L. No. 102-575 §§501-507, Stat, 4600, 4650-55 (1992).

Title V of the CUPCA was enacted by Congress as a comprehensive settlement to deal with the issues of un-quantified federal reserved water rights of the Ute Indian Tribe and other unresolved tribal claims arising out the 1965 Deferral Agreement.  *Id* at §501(b).  Under Title V, the United States compensated the Tribe for non-realized benefits anticipated under the Deferral Agreement.  The Tribe has received and accepted that compensation in the form of payments pursuant to Section 502(a).  Under the express terms of the CUPCA Title V, in exchange for perennial payments the Tribe agreed to waive and release "any and all claims relating to its water rights" including the "right to develop lands" covered by the 1965 Deferral Agreement.  ECF 22-1, §507.

As noted, the State of Utah was not a party to the 1965 Deferral Agreement.  Nor has the Tribe sued for breach of the Deferral Agreement, or for obligations due to the Tribe under the successor CUPCA legislation.  Consequently, the Deferral Agreement cannot now form the basis

of any "definite and concrete" controversy warranting this Court's declaration of the efficacy of that Agreement.  The Tribe has failed to demonstrate an actual or imminent injury caused by any of the state defendants that is of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.  *City of Los Angeles v. Lyons*  461 U.S. 95 (1983) (To satisfy the "case or controversy" requirement of Art. III, a Tribe must show that he has sustained or is immediately in danger of sustaining some direct injury as the result of the challenged official conduct, and the injury or threat of injury must be real and immediate, not conjectural or hypothetical.)

       B.      *The Settled Deferral Agreement Claims Do Not Constitute a Current Controversy.*

Furthermore, any alleged injuries suffered by the Tribe from unresolved claims arising out of the Deferral Agreement were redressed, and continue to be redressed, by payments made to, and accepted by, the Tribe pursuant to Title V of CUPCA.  The Tribe's waiver and release of all claims related to the Deferral Agreement eliminated any past, present, or future case or controversy arising from that Agreement.  *See Nike v. Already LLC*, 663 F. 3d. 89,87 (2nd Cir. 2011) *aff'd*, 568 U.S. 85 (2013) (A covenant not to sue eliminates a case or controversy).  Courts should not exercise jurisdiction over cases in which one or both of the parties plainly lacks a continuing interest, as when the parties have settled.  *Friends of the Earth, Inc. v. Laidlaw Environmental Services* (TOC), Inc., 528 U.S. 167, 192 (2000).  "Nor can one who avails himself of benefits conferred by a statue deny its validity."  *Buck v. Kuykendall*, 267 U.S. 307, 316 (1925).   If there ever was an actual controversy arising out of the Deferral Agreement, it was settled and resolved long ago.  Accordingly, there is no controversy of sufficient immediacy at issue in this action and therefore, the Court lacks jurisdiction and should dismiss Claims I, II, and IV for declaratory relief.

C.      *Tribe's Request for Pre-emptive Estoppel Does Not Create a Controversy.*

The Tribe asks the Court to declare that the State is estopped from "repudiating its direct involvement in the negotiation and execution of the Agreement" by the doctrines of "estoppel by legislative record and/or equitable estoppel" and argues that "the doctrines of res judicata, collateral estoppel, judicial estoppel, and stare decisis" prevent the State Engineer from asserting regulatory authority.  Rather than a present actual controversy, the Tribe seeks a declaratory judgment to test the legal sufficiency of potential defenses.  This is not the purpose or design of the Declaratory Judgment Act.  Courts have held that no "controversy" exists when a declaratory judgment plaintiff attempts to obtain a premature ruling on potential defenses that would typically be adjudicated in a future lawsuit.  *Hanes Corporation v. Millard,* 531 F.2d 585, 593 (D.C. Cir. 1976); *Veoh Networks, Inc. v. UMG Recordings, Inc.,* 522 F.Supp.2d 1265, 1271 (S.D. Cal. 2007); *see also* 26 C.J.S. Declaratory Judgments § 490.  Similarly, a plaintiff may not use a declaratory judgment action to determine the validity of a defense that a State might raise in a future proceeding.  *Calderon v. Ashmus,* 523 U.S. 740, 747 (1998).  The Tribe's first and second claims for relief are, in part, an improper request for a ruling on potential defenses.  In claim number II, the Tribe seeks a declaratory judgment as to the defenses that it might assert in a hypothetical breach of contract action or an adjudication of the Tribe's water rights in future judicial proceedings.  The Tribe appears to be testing the waters as to the validity of these defenses.  The Tribe is not entitled to a dress rehearsal.  In practice, the doctrines of equitable estoppel, res judicata, and collateral estoppel would properly arise only as a defense in a future suit brought by the Tribe.  The Tribe's request for declaratory relief is nothing more than a request for an advisory opinion as to the validity of potential defenses to a future lawsuit.  Such a request does not create a current "actual controversy" sufficient to compel a declaration from this

Court.  *See Coffman v. Breeze Corps.* 323 U.S. 316, 324 (1945).  The case or controversy requirement is designed to "prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way."  *Abbott Laboratories v. Gardner,* 387 U.S. 136, 148 (1967).

Simply put, despite its claims, the Tribe has presented no actual controversy.  Absent an actual controversy, the Court lacks declaratory judgment jurisdiction and the Court should dismiss Claims I, II and IV of the Second Amended Complaint.

## II.  The Court Should Abstain from, or Decline, Entering Declaratory Relief Because the State Court General Adjudication will include the Tribe's Water Rights

Even if the Tribe presented a case or controversy sufficient to provide this Court with subject-matter jurisdiction, the Court should abstain from ruling on the Tribe's declaratory judgment claims against the State because of the ongoing water-rights lawsuit being litigated in Utah state district court.  Alternatively, if the Court concludes that the precise requirements for abstention are absent, the Court should decline to entertain the Tribe's declaratory judgment claims against the State for those same reasons.

### A.  The Court Should Abstain Under the Colorado River Doctrine.

As noted in the State Defendants' Memorandum in Support of its Motion to Dismiss, the McCarran Amendment and subsequent United States Supreme Court authority respect ongoing state lawsuits with respect to water rights, even when federal issues, the federal government, or Indian Tribes, might be involved.  43 U.S.C § 666(a); *Colorado River Water Conservation District v. United States*, 424 U.S. 800, 819 (1976).

In *Colorado River Water Conservation District*, the Supreme Court upheld a district court's dismissal of an action seeking federal adjudication of water rights in favor of a contemporaneous state court adjudication.  The Court acknowledged the "highly interdependent" nature of rights to water, and that "actions seeking the allocation of water essentially involve the disposition of property and are best conducted in unified proceedings."  *Id*.  The Supreme Court upheld the dismissal based on "considerations of [w]ise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation."  *Id.* at 817 (quoting *Kerotest Mfg. Co. v. C-O-Two Fire Equipment Co.,* 342 U.S. 180, 183 (1952)).

In *Arizona v. San Carlos Apache Tribe*, 463 U.S. 545 (1984), the Supreme Court reversed a decision of the federal appellate court and deferred to state court proceedings that were pending in the states of Arizona and Montana to adjudicate the water rights claims of Indian Tribes.  The Court concluded that where state courts have jurisdiction to adjudicate Indian water rights, concurrent suits brought by Indian Tribes seeking the adjudication of their rights are subject to dismissal under the *Colorado River* doctrine.  *Id*. at 565-570.  The Court opined that "[i]f the state proceedings have jurisdiction over the Indian water rights … then concurrent federal proceedings are likely to be duplicative and wasteful, generating additional litigation through permitting inconsistent dispositions of property."  *Id.* at 567.  Moreover, the Court expressed concern about "unseemly" races to the courthouse and potentially competing judgments. *Id.* at 567-68.  The Court proclaimed:

> The McCarran Amendment, as interpreted in *Colorado River,* allows, and encourages state courts to undertake the task of quantifying Indian water rights in the course of comprehensive water adjudications.  Although adjudication of those rights in federal court instead might in the abstract be practical, and even wise, it will be neither practical nor wise as long as it creates the possibility of duplicative litigation, tension and controversy between the federal and state forums, hurried and pressured decision making, and confusion over the disposition of property rights.  *Id.* at 569.

9

The State of Utah is currently a party in an ongoing general adjudication of water rights within the Uinta Basin.  *See In the Matter of the General Determination of all the Rights to the Use of Water, Both Surface and Underground, Within the Drainage Area of the Uinta Basin in Utah*, Dist. Ct. for Duchesne County, State of Utah, Case No. 560800056.  The State Engineer has filed approximately 19 Proposed Determinations with the Court for subdivision areas within the adjudication basin.  The Court has decreed, on an interlocutory basis, approximately 8 of those 19 Proposed Determinations.  The United States has not been joined in the Uintah Basin General Adjudication.  When the United States is joined, all water right claims of the United States, including claims asserted as a trustee for the Ute Tribe, will be subject to the jurisdiction of Utah's 8th District Court.  This Court should therefore abstain from ruling on the Declaratory Judgement claims against the State Defendants and should dismiss the Tribe's Declaratory Judgment Claims.  *Colorado River,* 424 U.S. 800 (1976).

      B.     *Alternatively, the Court Should Refuse to Entertain the Tribe's Declaratory Judgment Claims.*

Federal district courts possess broad discretion to determine whether and when to entertain an action under the Declaratory Judgment Act, even when the suit otherwise satisfies subject-matter jurisdictional prerequisites.  *Brillhart v. Excess Ins. Co. of Am.*, 316 U.S. 491, 494 (1942).  Unlike the doctrine of abstention under which a district court can decline to exercise jurisdiction only in rare circumstances,[3] district courts have substantial latitude to decide whether to dismiss a declaratory judgment suit in light of pending state proceedings and "need not point

---

[3] *See Colo. River Conservation District v. U.S.* 424 U.S. 800, 813 (1976) "Abstention from the exercise of federal jurisdiction is the exception, not the rule" and is "justified ... only in the exceptional circumstances where [it] would clearly serve an important countervailing interest". However, the Court recognized that in certain "situations involving the contemporaneous exercise of concurrent jurisdictions ... by state and federal courts," abstention might be proper.

to exceptional circumstances to justify their actions." *Wilton v. Seven Falls Co*. 515 U.S. 277, 286 (1995). The Declaratory Judgment Act is "an enabling Act, which confers a discretion on the courts rather than an absolute right upon the litigant." *Id.* "In the declaratory judgment context, the normal principle that federal courts should adjudicate claims within their jurisdiction yields to considerations of practicality and wise judicial administration." *Id* at 288.

In *Brillhart*, the Supreme Court opined that "[o]rdinarily it would be uneconomical as well as vexatious for a federal court to proceed in a declaratory judgment suit where another suit is pending in a state court…." *Brillhart*, 316 U.S. at 495. "A district court … should ascertain whether the questions in controversy between the parties to the federal suit, … can better be settled in the proceeding pending in the state court." *Id.*

Parallel general adjudication proceedings are currently pending in state court. The state of Utah has a strong interest in adjudicating water rights within its boundaries, the state has established a system for the comprehensive adjudication of water rights designed to globally resolve the claims of everyone asserting a water right, including the Tribe, and all claimants will have an opportunity to present objections. In sum, the issues the Tribe now asks this Court to declare are delegated, under the McCarran Amendment, to the general adjudication proceedings in state court. Accordingly, even if the Court had jurisdiction to declare the Tribe's interests as requested, under the McCarran Amendment or alternatively, the *Colorado River* abstention doctrine, the Court should decline jurisdiction here and dismiss the Second Amended Complaint Claims I, II and IV.

## III.   The Tribe's First and Fourth Claims Should be Dismissed for Failure to State a Claim

Even if the Court concludes that a case or controversy exists sufficient to create subject-matter jurisdiction, and even if abstention or declination of the declaratory judgment claims are

11

improper, the Court should dismiss the Tribe's First and Fourth Claims on their merits for failure to state a claim against the State Defendants.

The Tribe seeks "a declaration that the Deferral Agreement is a binding quantification of the Tribe's…Water Rights [and that Utah is] estopped from repudiating its Agreement to the quantification …."  Compl. ¶ 4 ECF.  57, 102.  The State was not a party to the 1965 Deferral Agreement; the Central Utah Water Conservancy District could not bind the State to the Agreement; the Utah Legislature's reference to the Deferral Agreement in a "whereas clause" of a non-binding resolution could not and did not make the State a party to that Agreement; and, regardless, the parties to the Deferral Agreement could not have "quantified" the Tribe's water right by way of the Agreement.  The Tribe's Memorandum in Opposition to the State's Motion to Dismiss provides nothing substantial to refute the State's argument.

A.      *The Tribe's Reliance on "Estoppel by Legislative Record" is in Error and Does Not Create a Cause of Action against the State, a Non-signatory to the Deferral Agreement.*

While the Tribe correctly asserts that, on motion to dismiss, the Court must accept as true the Tribe's allegations of material fact, in its opposition memo the Tribe confuses allegations of fact with legal conclusions.  This Court need not accept those conclusions as correct. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

The Tribe relies on "averments alleging that the State of Utah was indeed a party to or bound by" the Deferral Agreement, and concludes the State is bound because the State Legislature "acknowledge[d its]…direct involvement" in the Deferral Agreement through its approval of a resolution.  Pl. Opp., ECF 82, pp. 9-11.  The Tribe then concludes that the Deferral Agreement binds the State "because justice and fair play require it," and that the State is "prohibited under the doctrines of estoppel by legislative record, and/or equitable estoppel," from

arguing it is not "bound by the terms of the 1965 Deferral Agreement." *Id*.  These conclusory assertions, like the others, are not only mistaken, but do not rise to the level of a current controversy that would trigger a declaration from this Court.

The Tribe does not define or explain the "doctrine," it calls "estoppel by legislative record," nor does it cite any authority referring to, let alone applying, this theoretical "doctrine." Plaintiff does not offer any argument to which the State Reply can relate to "estoppel by legislative record."  This did not constitute a cause of action or current controversy, and so cannot be the basis for declaratory relief.  The claim failed as a matter of law.

      B.     *The Tribe's Reliance on the Doctrine of "Equitable Estoppel" is Mis-applied and Does Not Create a Cause of Action against the State, a non-Signatory to the Deferral Agreement.*

Concerning the Tribe's request for a declaration applying "equitable estoppel," the Tribe mis-applies that label here.  Under the guise of "equitable estoppel" the Tribe seeks to assert an implied contract at law with the State which could only arise under the separate theory of *promissory* estoppel.  As argued, the State has made no such promise to the Tribe to quantify reserved water rights outside of CUPCA, or to be bound by the terms of the Deferral Agreement. There is no implied-at-law contract between the State and the Tribe here.[4]

Further, even if the Tribe intended to argue equitable estoppel, it has failed to plead the elements of and support for such estoppel which must underlie application of the doctrine; and

---

[4] Promissory estoppel "seeks a judicially enforced performance of a promise" and "is no different than an implied-in-law contract[.]"  *Carter*, 98 Fed. Cl. at 638 (citing *Lawndale Restoration Ltd. Partnership v. United States,* 95 Fed.Cl. 498, 507 (2010) ("'Promissory estoppel is another name for an implied-in-law contract claim.'") (quoting *Hubbs v. United States,* 20 Cl.Ct. 423, 427(1990)).  In addition, "[a] useful distinction when contrasting the two types of estoppel is to determine whether the claim is employed offensively or defensively[.]" *Carter*, 98 Fed. Cl. at 639.  Here, the Tribe is using it offensively, as a "sword," rather than defensively, as a "shield."  *Id.* (citation omitted).

the Tribe also ignores the applicable requirements for asserting the doctrine against the government. *U.S. v. One Gulfstream G-V Jet Aircraft*, 941 F. Supp. 2d 1, 13 (D.D.C. 2015) ("[t]he [equitable estoppel] doctrine applies only if the government's conduct can be characterized as misrepresentation or concealment such that it will cause an egregiously unfair result.") (distinguished on other grounds); *U.S. v. Philip Morris Inc.*, 300 F.Supp.2d 61, 70-71 (D.D.C. 2004) ("[t]he party wishing to assert estoppel against the government must not only demonstrate each of the traditional elements of the doctrine [false representation, intent to invite action by the party to whom the representation was made (including that party's ignorance of the true facts), and reliance], but must also make a showing of injustice and lack of undue damage to the public interest.") (distinguished on other grounds); *Angiulo v. U.S.*, 867 F. Supp. 2d 990, 999 (N.D. Ill. 2012) ("[w]hen equitable estoppel is invoked against the government, the misconduct required is 'more than mere negligence' and must be 'an affirmative act to misrepresent or mislead' a plaintiff about his rights and remedies."). Plaintiff has not pled such affirmative acts, and accordingly, Plaintiff's request for a declaration imposing estoppel over a non-existent controversy, fails to state a justiciable claim.

By participating in the negotiations that led to the 1990 Compact and Congress' passage of CUPCA, and by thereafter accepting some $250,000,000 under that Act, (*see* Compl. ¶¶ 193, 198) the Tribe, not the State, should be estopped under general principles of equity and fair play. As the State and the United States have argued, by receiving and accepting the lucrative benefits of the CUPCA, the Tribe is bound by the settlement the 1990 Compact and CUPCA effectuated. The Tribe, focused on undoing the provisions of the 1990 Compact it no longer wants, blinds itself to the fact that CUPCA and the 1990 Compact, taken together, have provided the Tribe with millions of dollars and have acknowledged the amount of water the Deferral Agreement

contemplates.  The Tribe cannot have it both ways.  "It is true that one cannot in the same proceeding both assail a statute and rely upon it."  *Buck v. Kuykendall*, 267 U.S. 307, 316 (1925).

C.      *Quantification of Water Rights is Delegated Under the McCarren Amendment to State General Adjudication Proceedings, Not Federal Courts.*

Next, the Tribe argues that its reserved water rights are based on federal rather than state law and that federal law creating reserved water rights preempts state law, Opp. Memo., ECF 82 at 11-13.  No one questions these rudimentary propositions.  The *quantification* of such rights, however, is not something that could have been accomplished by Agreement.  Nor could a declaration from this Court effectively quantify the Tribe's water right.  As noted, quantification of the Tribe's water rights must occur in a comprehensive state court general adjudication or similar federal court proceeding.  *Colo. River Water Con. Dist. v. US,* 424 U.S. 800, 811 (1976).  Such a proceeding involves all users who claim water rights in a hydrologic system—in this instance in the hydrologic system (the Uintah Basin) that contains the Tribe's water rights.  The general adjudication process is necessary because all water users participate as potential adverse parties.  For such a proceeding the McCarran Amendment, 43 U.S.C. § 666(a), waives the United States' sovereign immunity to be joined and present and defend the Tribe's claims.  This lawsuit, in this Court, is not a general adjudication proceeding by which the Tribes' water right can be quantified.

The Tribe cites *Baley v. United States*, 942 F.3d 1312, 1340 (Fed. Cir. 2019), for the proposition that "there is no requirement that the State agree to the quantification of the Tribe's Indian reserved water rights before [those] . . .  rights can be judicially recognized and enforced."  Opp. Memo ECF 82 p. 12.  But *Baley* had nothing to do with the process of *quantification* of Indian water rights.  There the Bureau of Reclamation enforced the Tribes' recognized but unquantified Tribal water rights to the extent necessary to respect the Endangered Species Act,

(ESA) *Baley v. U.S.*, 942 F.3d 1312, 1336 (Fed. Cir. 2019). The Court noted that "at a bare minimum, the Tribes' rights entitle them to the [United States] government's compliance with the ESA…to avoid placing the existence of their important tribal resources in jeopardy." *Id*. at 1337. The *Baley* Court's point was clear – tribal rights did not need to be quantified for the Bureau to terminate water deliveries to junior right holders to protect endangered fish under ESA for the tribes' benefit. *Id*. at 1340. After all, in *Baley*, "the Bureau's actions to comply with the ESA and to protect tribal resources were one and the same." *Id*. at 1341.

Nothing in *Baley* (or the other cited cases), supports the Tribe's contention that the 1965 Deferral Agreement quantified the Tribe's water rightS.[5] As noted, to the extent the Tribe seeks quantification of its water rights, the McCarren Amendment determines the appropriate forum for such quantification-- the ongoing general adjudication proceedings, not this lawsuit in this Court. Accordingly, the Tribe's requested relief – a declaration that the Deferral Agreement is determinative of the Tribe's water rights, or that the defendants be estopped from arguing otherwise, neither creates nor states a justiciable controversy for this Court to determine, and therefore should be dismissed under Rule 12(b)(6).

## IV.    The Tribe's Untimely Claims for Declaratory Relief are Barred by Laches

Even if the Court has jurisdiction, even if the Court should not abstain, and even if the Court believes that the Tribe has stated a claim for relief against the State—a non-signatory to

---

[5] The Tribe also argues that Congress recognized the terms of the Deferral Agreement "as valid and binding through the Colorado River Basin Act of 1968." Opp. Memo. at 12). While it is correct that Section 501(a) of that Act refers to "the Agreement dated September 20, 1965" (presumably the Deferral Agreement) and mentions the Ute Indian projects that the Tribe was compensated for under CUPCA, that Act says nothing about and has nothing to do with quantification of the Tribe's water rights. At best, those parties could have agreed to amounts of water they would accept, or not object to, when the rights were eventually quantified in a general adjudication-type proceeding. The quantification process, however, did not occur when the parties negotiated the Agreement.

the Deferral Agreement the Tribe seeks declarations about the Court should dismiss Claims I, II, and IV against the State because laches bars the claims.

Congress ratified the 1990 Compact in 1992 when it codified CUPCA in "Title V—UTE INDIAN RIGHTS SETTLEMENT." § 503 (a). (P.L. 102-575). Since then, the United States, the State of Utah, and the Tribe have relied upon that settlement, and over that time the Tribe has accepted the benefits of the settlement-- to the tune of at least the $250,000,000. Compl. ¶¶ 193, 198. Understandably, for over 25 years the Tribe has accepted the settlement and has not complained about or challenged CUPCA or the settlement the Tribe has received.

In opposition, the Tribe asserts that it is still not "challenging the 1990 Compact and/or CUPCA as unlawful authorities that have been existence since 1992." Opp. Memo. at 13. But the Second Amended Complaint belies that assertion. The prayer for relief clearly states the Tribe's requested relief and prays for:

> A declaration that Title V of CUPCA is unenforceable because (i) it was based on a mutual mistake, (ii) there was no meeting of the minds; (iii) none of the prerequisites under CUPCA have been satisfied, or (v) (*sic*) Title V of CUPCA is unconscionable and, hence, unenforceable, and the purported "settlement" under Title V instead constitutes an uncompensated taking of tribal property; alternatively, a declaration that the "waiver" under Title V is limited to contract-based claims arising from the Federal Defendants' failure to construct the Uintah, Upalco, and Ute Indian Units of the CUP. Together (*sic*) with appropriate judicial enforcement under 28 U.S.C. § 2202.
> Compl. pp. 99-100, ¶ 4 (ECF. 57, pp. 102-103, ¶4).

Thus, the Tribe asks this Court to declare that the 1990 Compact and CUPCA are, as the Tribe puts it, "unlawful authorities." These authorities have been in place since 1992 and the parameters, impacts, and substance of CUPCA have been known to and accepted by the Tribe since Congress enacted the statute and ratified the 1992 Compact. But, rather than challenge the settlement in 1992, and rather than decline the settlement proceeds in protest of the unlawful authorities, at any time since 1992, the Tribe has accepted payment under the CUPCA settlement

up to the present time, only to recently claim in this lawsuit that the settlement CUPCA

effectuated is inadequate.  To now ask this Court to declare that the settlement is insufficient, or

that CUPCA somehow incorrectly finalized the Tribe's interests, is simply disingenuous at best.

And the equitable doctrine of laches applies to bar the plaintiff from such delayed change of

mind. [6]

## V.   The Tribe's Attempt to Get One Federal Court to Opine about the Scope of a Decision of Another Federal Court Does Not State a Declaratory Judgment Claim

In its second claim for relief, the Tribe asks this Court to declare that under the Tenth

circuit's *Ute* line of cases, the Tribe has plenary administrative, regulatory, legislative, and

adjudicative jurisdiction over its water rights.  Compl. ECF 57 at 246.  Although those decisions

speak for themselves, it bears pointing out that none of the opinions that comprise the *Ute* line of

cases raised, addressed, litigated, or determined the Tribe's authority over its water rights.  Nor

did any of the courts presiding over those cases opine as to the Tribe's right to administer or

regulate water on the reservation.  Nonetheless, the Tribe now asks this Court for an advisory

declaration of the *stare decisis* effect of the decisions of sister courts.  The Tribe cites no case

which addressed a Tribe's reserved water claims or a Tribe's authority to administer or regulate

Tribal water rights in the situation where the Tribe's reservation was open to homesteading and

allotment and where Tribal and non-Tribal water rights are intertwined.

Regardless, in its opposition memo, the Tribe appears to have given up this request for a

declaration as to the *Ute* line noting, "the court need not even address the question as the Tribe's

Second claim for Relief arises under federal law extending far beyond *Ute v. Utah*."  *See*, Memo.

---

[6] The Tribe asserts that laches does not apply to Tribal governments.  This is a misstatement of the law.  *See City of Sherril, N.Y. v. Oneida Indian Nation of N. Y.*, 544 U.S. 197,199 (holding that equitable considerations of laches, acquiescence, and impossibility barred the Tribe's claims).

Opp. at 18.  Yet, in all of the reference to "federal law extending far beyond *Ute v. Utah*,"

Plaintiff ignores the particular act of Congress, CUPCA, which definitively settled the Tribe's

water right claims, and which credits to the Tribe massive amounts of water and perpetual

payments while assigning to the State Engineer primary responsibility to regulate and administer

the water stored and delivered through the CUP infrastructure.  PL 102-575, § 503.  Plaintiff

ironically fails to acknowledge that, in accepting settlement payments in excess of $250,000,000

over the years, in negotiating and testifying in support of the CUPCA and the Settlement, and in

over 25 years of slumbering on these benefits and declining to challenge or dispute the

sufficiency of CUPCA the Tribe has in fact and deed been exercising its authority to administer

its water rights.  In light of the history of accepting the benefits of the CUPCA settlement, if

anything, it is the Tribe that should be estopped from repudiating CUPCA and the 1990

Compact.  Regardless, Plaintiff has not stated an actionable claim that would entitle it to the

declaratory relief it requests from this Court.  The Tribe has not suffered an injury in fact,

affirmatively and causally resulting from any act of the State or State officials.  Accordingly, the

First, Second, and Fourth claims simply fail to state a claim upon which relief may be granted.

Those claims should be dismissed.

## VI.    Plaintiff's Sixteenth Claim Should Be Dismissed

The Tribe's[7] claims under § 1983, § 1981, and Title VI contained in their Sixteenth

Claim for Relief should be dismissed.  As discussed in the State Defendants' original Motion,

this claim and its myriad underlying theories are legally insufficient.  None of the Tribe's

arguments in opposition change this conclusion.

---

[7] The State Defendants also join the Federal Defendants' arguments on this claim, including their argument that the Tribe lacks standing to bring Fourteenth Amendment claims.  (Fed. Defs.' Mot. to Dismiss (ECF 68) at 40–42.)

A.      *The § 1983 Claim Should be Dismissed.*

As a matter of black-letter law, Plaintiffs cannot assert § 1983 damages claims against a state, and may only hold supervisors and high-level officials liable if they plead (and ultimately prove) facts showing that the official themselves participated in the alleged constitutional violation.  Because they have not, and cannot, do so, the § 1983 claims should be dismissed.

1.      *The Claims Against the State Should be Dismissed, Notwithstanding the Eleventh Amendment.*

As the Supreme Court has plainly held: "[n]either a state nor its officials acting in their official capacities are 'persons' under § 1983."  *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989).  The Tribe asks this Court to ignore this binding authority, arguing that a cause of action can move forward because the State (arguably) waived its Eleventh Amendment immunity by intervening in this litigation.

But the issue in *Will* was not whether a § 1983 damages claim against a state is barred by the Eleventh Amendment.  The issue was whether a state can ever be sued under § 1983 at all because it is not a "person" who "subjects … any [other person] to the deprivation of any rights, privileges or immunities secured by the [federal] Constitution and laws …."  42 U.S.C. § 1983.  The *Will* court specifically noted that, because the case came through the state system, the Eleventh Amendment issue was irrelevant because it "does not apply in state courts," leaving the "question of whether a State is a "person" under § 1983 squarely before us."  *Will*, 491 U.S. at 63–64.

As a matter of statutory interpretation—not as a matter of constitutional immunity—the § 1983 claim contained in the Sixteenth Claim for Relief should be dismissed against the State of Utah.

2.      *The Claims Against the Individual Defendants Should be Dismissed Because Plaintiff Has Not Pleaded Personal Participation in any Unconstitutional Activity.*

The Tribe's § 1983 claims against the two individual State Defendants—Governor Herbert and State Engineer Wilhelmsen—fare no better than the Tribe's claims against the State. That is because the Tribe has not pleaded any facts showing that Governor Herbert and Ms. Wilhelmsen, "they themselves," took any action violative of the constitution. *Ashcroft v. Iqbal*, 556 U.S. 662, 683 (2009).

"'Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*,' and 'vicarious liability is inapplicable.'" *Sherrod v. McHugh*, 334 F. Supp. 3d 219, 237 (D.D.C. 2018) (quoting *Iqbal*, 556 U.S. at 676); *Int'l Action Ctr. v. United States*, 365 F.3d 20, 27–28 (D.C. Cir. 2004).  Rather, a plaintiff must show that a supervisor or other high-level official had "direct responsibility" for the constitutional violation by showing an "affirmative link" between the official's action or policy and the constitutional violation. *Rizzo v. Goode*, 423 U.S. 362, 371 (1976).  If a plaintiff does not plead facts plausibly showing personal involvement of a decision-maker in the allegedly unconstitutional action, then the Court should dismiss the case as to those decision-makers. *Cameron v. Thornburgh*, 983 F.2d 253, 258 (D.C. Cir. 1993).

A prime example of the pleading standards required comes from the watershed case establishing the 12(b)(6) dismissal standard in civil actions generally—*Ashcroft v. Iqbal.*  In that case, plaintiff Javaid Iqbal, a person of the Islamic faith, was detained and allegedly mistreated while in custody following the September 11, 2001 attacks.  556 U.S. at 666.  Iqbal named former Attorney General John Ashcroft and former FBI Director Robert Muller as defendants,

alleging that they adopted unconstitutional policies which subjected Iqbal to harsh conditions of confinement because of his race, religion, or national origin. *Id.*

The Supreme Court determined that Iqbal did not plead a plausible claim against General Ashcroft or Director Muller, because the only facts asserted by Iqbal was that those two defendants adopted a policy of approving restrictive conditions of confinement for post-September-11th detainees until cleared by the FBI. *Id.* at 683. Iqbal alleged that General Ashcroft was the "principal architect of," and Director Muller was "instrumental" in, "adopting an executing" a policy that "maliciously subjected" Iqbal to harsh conditions of confinement "solely on account of [his] religion, race, and/or national origin, which they "knew of, condoned, and willfully and maliciously agreed to …." *Id.* at 680–81. He further alleged that, post-9/11 the FBI "under the direction of" Director Muller, detained and arrested thousands of Arab Muslim men" and that Ashcroft and Muller "approved" of the policy of allowing those detainees to be housed in super-maximum security conditions. *Id.* at 681.

According to the Court, the allegations regarding intent were "conclusory;" the remaining facts either did not show any personal participation in any unconstitutional activities, nor did it show "more than the mere possibility of misconduct …" *Id.* at 679. Because General Ashcroft and Director Muller "cannot be held liable unless they themselves acted [in violation of the constitution]," and because any remaining allegations were conclusory, the case against them had to be dismissed for failure to state a plausible claim. *Id.* at 683.

In this case, the Tribe makes similarly conclusory allegations; it argues that it states a § 1983 claim against Governor Herbert and Ms. Wilhelmsen because:

- they incorporated 345 paragraphs of alleged facts and argument asserted earlier in the complaint (Opp. Memo ECF 82 at 20)

- Governor Herbert is the Governor, and was the "highest elected official" when the "State of Utah" entered into the Green River Block Exchange Contract (Opp. Memo ECF 82 at 21)

- Ms. Wilhelmsen is the State Engineer, charged by statute as being responsible "for the general administrative supervision of the waters of the state…" (Opp. Memo ECF 82 at 21)

- The Tribe and its members are a "distinct minority group" (Opp. Memo ECF 82 at 22)

- The Central Utah Project water development program has disproportionately benefitted the majority white Utah population but has not brought water security to the Tribe.  (Opp. Memo ECF 82 at 23)

- The defendants (generically) have "conspired and acted in concert to racially segregate and racially discriminate against the Ute Indian Tribe and its Members (Opp. Memo ECF 82 at 21)

These allegations do not state plausible claims against Governor Herbert and Ms. Wilhelmsen.  As in *Iqbal*, Plaintiffs does not allege any personal participation by either Governor Herbert or Ms. Wilhelmsen—rather, they only allege that Herbert and Wilhelmsen are high-level policy makers in charge when unspecified but allegedly discriminatory activity took place.  The Court in *Iqbal* clarified that personal participation is required, that conclusory statements that government defendants engaged in intentional discrimination is insufficient, *id.* at 679–81, and that allowing a claim to go forward against high-level officials in such circumstances would "exact heavy costs in terms of efficiency and expenditure of valuable … resources that might otherwise be directed to the proper execution of the work of the Government."  *Id.* at 685.

Like the Tribe's complaint, Mr. Iqbal's complaint was replete with factual allegations. *See id.* at 668 Like the Tribe, Iqbal pleaded and argued that the high-ranking officials could be liable for directing institutions that arguably violated his rights, so long as the officials had

knowledge of and acquiesced in the unconstitutional conduct.  *Id.* at 669, 677.[8]  Like the Tribe's complaint, Iqbal's complaint pleaded the existence of circumstances which may have had a disparate impact on one protected class.  *Id.*  Yet, such allegations notwithstanding, the Supreme Court affirmed the dismissal of the § 1983 claims against the high-level supervisory officials in *Iqbal*, this Court should follow the Supreme Court's direction and do the same in this case.[9]

> 3.  *The Claims for Injunctive and Declaratory Relief should be Dismissed Because Plaintiffs Has Not Shown an Ongoing Constitutional Dispute.*

The § 1983 claims against the State Defendants seeking declaratory and injunctive relief should be dismissed.  The Tribe opposed dismissal of its declaratory judgment claims, and for the reasons stated above, the Court should dismiss those claims.  But for the purpose of the request for declaratory and injunctive relief under the Sixteenth Claim for Relief, the Tribe is required to plead an "ongoing violation of federal law" in order to be entitled to proceed.  *Green v. Mansour*, 474 U.S. 64, 71, 73 (1985).  Because the State is not a "person" subject to suit under § 1983, plaintiffs must name an individual—one who can be named in his or her official capacity—who engages in that current, ongoing, violation of federal law.  *Ex parte Young*, 209 U.S. 123, 159–60 (1908).  The Tribe has not alleged that either of these named state officials has personally participated in any unconstitutional activity.  Again, the best that the Tribe can do is

---

[8] The Tribe argues that a complaint cannot be dismissed unless "it appears beyond doubt that plaintiff can prove no set of facts in support [of] his claim which would entitle him to relief." (Opp. Memo ECF 82 at 20 (citing *Conley v. Gibson*, 355 U.S. 41, 45–46 (1957)).  Of course, this standard has been expressly "retired" by the Supreme Court and is no longer good law. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 563 (2007).

[9] Plaintiff also gives lip-service to the Due Process Clause of the Fourteenth Amendment.  (*See* Pl.'s Opp. at 7–8.)  But the Tribe does not delineate in its pleading or argument whether it seeks to claim violations of the substantive or procedural aspect of the due process clause, how that clause applies to this situation, which defendants allegedly engaged in any action violative of the due process clause, or why the related claim should not be dismissed. Accordingly, the Sixteenth Claim should be dismissed.

allege that the implementation of the CUPCA has a disparate impact on a discrete minority group and assert conclusory allegations that "defendants" have engaged in intentional discrimination. These conclusory and generic assertions fail to state a claim of past constitutional violations for damages, and they must fail for claims of declaratory and equitable relief as well.  Accordingly, Plaintiff's section 1983 claims should be dismissed as a matter of law.

To the extent the Tribe's Sixteenth Claim for Relief is based on § 1983, it should be dismissed against the State of Utah and the Individual State Defendants, whether the Tribe seeks monetary damages, declaratory relief, or an injunction.

B.      *The § 1981 Claim Should Be Dismissed.*

As discussed in the State's original Memorandum, "[s]ection 1981 does not create a private right of action against state actors," *Campbell v. Forest Preserve Dist. of Cook Cnty., Ill.*, 752 F.3d 665, 671 (7th Cir. 2014), and a plaintiff cannot "proceed with [a] cause of action based solely on § 1981." *Butts v. Cnty. of Volusia*, 222 F.2d 891, 895 (11th Cir. 2000); *accord Sledge v. Dist. of Columbia*, 869 F. Supp. 2d 140, 145 (D.D.C. 2012)[10].  The Tribe does not even attempt to address this rule in its opposition.  Accordingly, the Sixteenth Claim, to the extent it is grounded in § 1981, should be dismissed.

C.      *The Title VI Claim Should Be Dismissed.*

For the reasons stated in the State's original Motion to Dismiss, the Sixteenth Claim for Relief should be dismissed to the extent it is grounded on a violation of Title VI of the Civil

---

[10] The D.C. Circuit has indicated that the substance of a § 1981 claim may move forward against a government entity, using § 1983 as a vehicle.  *See Brown v. Sessions*, 774 F.3d 1016, 1021–22 (D.C. Cir. 2014).  However, because the Tribe's § 1983 constitutional claims fail—they cannot be brought against the State and cannot be brought against the Individual Defendants without proof of personal participation in the unconstitutional activity—they likewise fail if the substantive basis for them is § 1981.

Rights Act of 1964.  Plaintiff makes no argument in opposition to the State's arguments that the Individual State Defendants cannot be sued under Title VI, that the State itself cannot be considered a "program or activity" under Title VI, and that Plaintiff has not pleaded facts showing a plausible claim of intentional discrimination under Title VI. Plaintiff only mentions Title VI three times in the Opposition—all three quoting portions of the complaint, merely listing Title VI as an asserted basis for relief.  (Opp. Memo ECF 82 at 20-21 (quoting Second Am. Compl. ¶¶ 353, 358), *id.* at 232 (quoting Second Am. Compl. ¶ 1).  These conclusory citations cannot refute the relevant authority provided by the State, and the Sixteenth Claim should be dismissed to the extent it is based on a violation of Title VI.

Accordingly, the Sixteenth claim fails to state a claim and should be dismissed in its entirety.

## CONCLUSION

The Second Amended Complaint fails to state a claim as a matter of law.  For the reasons stated here and in United States and CUWCD's the memoranda supporting their separate Motions to Dismiss, this Court should dismiss this lawsuit in its entirety.

Respectfully submitted this 9th day of December, 2020.


*/s/Brook McCarrick*
Brook McCarrick (Utah Bar No.17026)
Assistant Attorney General
STATE OF UTAH
Office of the Utah Attorney General
160 East 300 South, 5th Floor
P.O. Box 140857
Salt Lake City, Utah 84114
(801) 366-0353
bmccarrick@agutah.gov
*Counsel for Utah Defendants*

## <u>CERTIFICATE OF ELECTRONIC FILING</u>

I hereby certify that on December 9, 2020, I filed the foregoing with the CM/ECF system, which will provide service to counsel of record.

*<u>Brook McCarrick</u>* <u>                  </u>